EX PARTE HARRY K. FOSTER.

No. A-536. Decided May 30, 1945.
Rehearing overruled July 11, 1945.
(188 S. W., 2d Series, 382.)

*Hughes & Monroe* and *P. P. Ballowe,* all of Dallas for relator.

The injunction in question was issued against Dallas County and relator was neither a party to that suit nor served with citation of the injunction issued therein, neither did he make an appearance in said case and the court had no jurisdiction over him at the time, therefore, the order of contempt as to him was void. Ex parte Armstrong, 8 S. W. (2d) 674; Masterson v. Little, 13 S. W. 154; International Brotherhood v. Keystone Freight Lines, 123 Fed. (2d) 326.

*Robertson, Leachman, Payne, Gardere & Lancaster, J. T. Suggs, M. E. Clinton* and *Donald L. Case,* all of Dallas, for respondent.

Petitioner by virtue of his interest in the subject matter in litigation and his participation and activities in the construction of the retaining wall was a party to the proceedings and the final judgment and was bound thereby. Cases cited in the opinion.

MR. JUSTICE SHARP delivered the opinion of the Court.

Relator was committed to the custody of the Sheriff of Dallas County because he was adjudged to be in contempt of the 101st Judicial District Court of Dallas County for violating a permanent injunction issued by that court in Cause No. 79272-E, styled The Texas & Pacific Railway Company v. Dallas County et al. He filed a petition for writ of habeas corpus with this Court, and was released under bond pending the final decision of his petition.

The following is a summary of the facts from which relator's commitment eventuated: The Texas & Pacific Railway Company and relator each own a tract of land in Dallas County, near the town of Mesquite, and a county road, known as Gross Road, separates the two tracts. In 1910 the Railway Company constructed a dam on its property, which created a lake thereon, referred to as Rady Lake, and some of its locomotives received water at the lake. Rady Lake is supplied by surface water which flows in a draw or natural drain which runs through relator's land and across Gross Road. After a heavy rainfall the surface water would flood the road and make it impassable for highway traffic. In 1944 Dallas County raised the grade of Gross Road seven or eight feet, and for that purpose took approximately 6,000 cubic yards of dirt from relator's land. A concrete box culvert with wing walls was constructed in place of an old wooden bridge. A concrete spillway or drop inlet seven feet in height, measured from the floor of the culvert, was built between the wing walls. This had the effect of impounding water on relator's property. The testimony shows that the spillway was constructed by the County at the request of relator and at his expense. After the culvert and spillway were completed, but before the road work was finished, the Railway Company filed Suit No. 79292-E against the County Judge, the County Commissioners, and the County Engineer of Dallas County, Engineer of Dallas County, to enjoin them from constructing the culvert in such manner as to obstruct the flow of surface waters under the culvert and into Rady Lake. It alleged that the construction of the spillway would prevent any water from flowing down the draw into Rady Lake until sufficient water had backed up against the north side of the road and reached a height sufficient to pass over the wall; that in dry

seasons, or when the rainfall is scanty, no water will flow into Rady Lake over that wall; and that the purpose of constructing the spillway in the culvert was not to further a public purpose, but was for the sole purpose of creating a lake or pond upon the private property of relator.

Relator was not a party to that suit. A temporary restraining order was granted ex parte against Dallas County, and was continued in force until March 8, 1944, at which time the county officials and the Texas & Pacific Railway Company entered into an agreed judgment, whereby the County of Dallas and the officials named in the suit agreed to reduce the height of the drop inlet from 7 to $4\frac{1}{2}$ feet and were mandatorily ordered to do so forthwith. They were further by agreement perpetually enjoined from raising the drop inlet above $4\frac{1}{2}$ feet from the floor thereof. After agreeing to such injunction, the County officials caused the spillway to be reduced in keeping with the mandatory order of the court.

Relator admits that thereafter he caused the height of the spillway to be raised from $4\frac{1}{2}$ feet to 7 feet. Upon motion of counsel for the Railway Company, and after a full hearing, the Honorable W. M. Cramer, Judge of the said court, on March 26, 1945, entered the following order, after reciting the facts in the order of March 8, 1944, and concluded by saying:

" * * * the court having heard the pleadings, evidence and argument of counsel is of the opinion that said Harry K. Foster is bound by the terms of the final decree and injunction entered herein on March 9, 1944, and that he is in contempt of Court in violating its terms as aforesaid.

"NOW, THEREFORE, on this March 26th 1945, it is ordered, adjudged and decreed that said Harry K. Foster is guilty of contempt of this Court in raising or causing to be raised said concrete spillway or drop inlet to a height of more than four and one-half feet ($4\frac{1}{2}'$), towit: seven feet (7') measured from the floor of said concrete culvert, and that said Harry K. Foster be imprisoned until he shall cause said concrete spillway or drop inlet to be reduced to an elevation of four and one-half feet ($4\frac{1}{2}'$) feet measured from the floor of said concrete culvert. Let commitment issue to the Sheriff of this County reciting generally the proceedings herein and accompanied by a certified copy of this judgment to be served upon said Harry K. Foster and as further evidence of the said Sheriff's authority, and further that said Harry K. Foster pay all costs of this proceeding for which let execution issue."

Relator filed a petition for writ of habeas corpus with this Court, and was released under bond pending final decision of his petition. Relator alleged that the judgment of contempt of court is void because, (1) he was not a party to Cause No. 79292-E, and (2) the drop inlet or spillway was situated on his property and not upon the county highway, and that under the provisions of Article 7500a, Vernon's Civil Statutes, he has the legal right to construct a dam on his own property and to impound surface waters thereon. Not being a nominal party to the injunction proceedings in Cause No. 79292-E, relator ordinarily would not be bound by its terms, and could not legally be convicted for violating its terms. Counsel for the Railway Company who filed motion for contempt contends that although relator was not named a party to the injunction proceedings, he was a party in interest and had actual knowledge of the proceedings and the final judgment entered therein, and that he in person and by and through his attorney participated in all the proceedings had in said suit, and approved the judgment rendered by the court upon the agreement of the parties, and was therefore "in active concert and participated with" the named defendants, and is bound by the terms of the restraining order.

The testimony disclosed that relator had a vital interest in the subject matter and outcome of the injunction proceedings, and that the spillway was constructed at his request and expense and for his benefit, and not for the benefit of the County or for any public purpose. Relator testified that he told one of the Commissioners of Dallas County that he wanted to build a dam to impound surface water and make a lake on his property, and that the Commissioner showed him something that he liked better; that the Commissioner agreed to build a concrete culvert with a seven foot wall or dam in its north end, the end next relator's property, if relator would agree to pay a "little extra" and give the County all the dirt it needed to raise the grade of the road. He further testified that he knew about the injunction suit and employed Mr. Kucera as his attorney to investigate the controversy and to see what water rights the Texas & Pacific Railway Company was claiming over his land, and instructed his attorney to go to the courthouse and "watch the lawsuit"; that he and his attorney were both in the courthouse on the day the injunction was set for hearing and the judgment by agreement was entered; that his attorney had numerous conversations with the attorneys for the Railway Company and the County, and he himself talked with some of the attorneys during the deliberations. Other witnesses testified that the deliberations lasted about two hours. At first relator would

not agree to lower the spillway at all and the Railway Company would not agree to have a wall of any height. Relator said that before the trial he sent two men to see Mr. Lancaster, attorney for the Railway Company, and that he also went to see him in an effort to persuade the Railway Company to let the spillway remain as it was constructed; that the County offered to put a 20-inch value in the spillway, and that he, relator, in case of emergency would let all the water through that the Railway Company wanted. Other witnesses testified that Mr. Edwards, attorney for Dallas County, would not agree to the entry of any judgment until relator and his attorney were satisfied and agreed to the judgment, and that his attorney did read the judgment and agreed that it should be entered; that relator was present in the courthouse when the judgment was agreed to and he himself agreed to its terms.

The testimony discloses that some six or eight feet of the culvert is on relator's property, but that he did not make this fact known during the injunction proceedings, and that the attorneys for all parties at that hearing believed that the culvert and headwall were located on the county highway. However, under the facts of this case the location of the spillway and culvert becomes immaterial.

This Court in the case of American Indemnity Co. v. Fellbaum, 114 Texas 127, 263 S. W. 908, 37 A. L. R. 633, cited and approved the rule announced in 15 R. C. L., p. 1010, sec. 483, which reads as follows:

"The courts look beyond the nominal parties, and treat all those whose interests are involved in the litigation and who conduct and control the action or defense as real parties, and hold them concluded by any judgment which may be rendered, as, for example, those who employ counsel in the case, assume the active management of the proceeding or defense, or who pay the costs and do such other things as are generally done by parties. In other words, by participating in the proceedings one is estopped by the judgment as to any questions actually litigated and decided therein."

This rule was again approved in Cavers et al v. Sioux Oil & Refining Co. (Com. App.), 39 S. W. (2d) 862. And for cases covering the rule which binds parties interested in matters involved in a judgment rendered by the court we cite the following: American Indemnity Co. v. Fellbaum, supra; Cavers et al v. Sioux Oil & Refining Co., supra; Olive-Sternenberg Lumber Co. v. Gordon, 138 Texas 459, 159 S. W. (2d) 845; Johnson v. Bingham (Com. App.), 265 S. W. 130; Bomar v. Ft. Worth

Bldg. Assn. (Civ. App.), 49 S. W. 914; Bragdon v. Wright (Civ. App.), 142 S. W. (2d) 703 (writ dismissed); City of Palestine v. City of Houston (Civ. App.), 262 S. W. 215 (writ dismissed 114 Texas 306, 167 S. W. 663); Esty & Camp v. Luther (Civ. App.), 142 S. W. 649 (writ refused); Finley v. Wakefield (Civ. App.), 184 S. W. 755; Pelton v. Trico Oil Co. (Civ. App.), 167 S. W. (2d) 625; Aluminum Colors, Inc. v. The Empire Plating Co., D. C., 5 Fed. Sup. 687; Regal Knitwear Co. v. National Labor Relations Board, 324 U. S. 9, 65 Sup. Ct. 478, 89 L. Ed. 437; Sabine Hardware Co. v. West Lumber Co., 5 Cir., 248 Fed. 123; St. Joseph Brewing Co. v. Hauser, 151 Mo. App. 423, 132 S. W. 54; see also Rule 683, Texas Rules of Civil Procedure.

We hold that relator by virtue of his knowledge of and interest in the subject matter of the litigation involved in Cause No. 79272-E, and his participation in the proceedings therein, is bound by the judgment entered therein.

Rule 683 of the Texas Rules of Civil Procedure is identical with Rule 65(d), of the Federal Rules of Civil Procedure. 28 NSCA following Section 723c. See Regal Knitwear Co. v. N. L. R. B., supra; Aluminum Colors, Inc. v. The Empire Plating Co., supra.

In the case of Regal Knitwear Co. v. National Labor Relation Board, 324 U. S. 9, 65 S. Ct. 481, 89 L. Ed. 437, the Supreme Court of the United States said, speaking of Rule 65(d):

"This is derived from the common law doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them, or subject to their control."

In the case of Ex parte Lee and Still, 127 Texas 256, 93 S. W. (2d) 720, this Court said:

"In habeas corpus proceedings this Court is restricted to the inquiry whether or not the trial court had jurisdiction of the cause and of relators. Ex parte Kimberlin, 126 Texas 60, 86 S. W. 717; Ex parte A. D. Lipscomb, 111 Tex. 409, 239 S. W. 1101; Ex parte Olson, 111 Tex. 601, 243 S. W. 773; Ex parte O. M. Smith, 110 Tex. 55, 58, 214 S. W. 320; 6 Ruling Case Law, 540; 12 Ruling Case Law, 1192, 1196, 1210, 1239, 1240; Ex parte Siebold, 100 U. S. 371, 375, 25 L. Ed. 717; Ex parte Kearney, 7 Wheat. 38, 45, 5 L. Edd. 391; Ex parte Terry, 128 U. S. 289, 9 S. Ct. 77, 32 L. Ed. 405; In re Debs, 158 U. S. 564, 15 S. Ct. 900, 39 L. Ed. 1092. Likewise this court is limited to the question as to whether or not the commitment is not void. The

question is, not whether the commitment was erroneously issued, but whether or not it was absolutely void. **Ex parte Testard**, 101 Tex. 250, 106 S. W. 319.

\* \* \* \* \* \*\* \*

"As said by Judge Williams, speaking for the Supreme Court, in the case of Ex parte Testard, 101 Tex. 250, 106 S. W. 319, 320, which involved habeas corpus proceeding: 'This is not an appeal from the judgment of the district court, but an application for the release of the relator, which can be sustained only by making it appear that the judgment is void. \* \* \* The judgment, therefore, is valid against collateral attack, and no amount of evidence offered before this court, tending to show that the relator was in fact innocent of the charge, can now avail him. The question of his guilt or innocence was for the trial court, and was concluded by its judgment pronounced after a hearing'."

The trial court had the authority to enter the order of commitment, and we find nothing in this record that would justify this Court to overrule the judgment of the trial court and discharge relator. Therefore the order granting the temporary writ of habeas corpus is set aside, and relator is remanded to the custody of the Sheriff of Dallas County to carry out the judgment of the trial court.

Opinion delivered May 30, 1945.

Rehearing overruled July 11, 1945.