**MULLINAX, WELLS, MAUZY & COLLINS, a Partnership, Appellants,**

**v.**

**Daniel R. DAWSON, Appellee.**

**No. 17822.**

Court of Civil Appeals of Texas, Dallas.

Feb. 17, 1972.

Rehearing Denied March 16, 1972.

Otto B. Mullinax, Mullinax, Wells, Mauzy & Collins, Dallas, for appellants.

Coy Johnson, Smith, Johnson & McDowell, Sulphur Springs, for appellee.

BATEMAN, Justice.

Appellants sued Daniel R. Dawson and Jane Carter Dawson for attorneys' fees and expenses incurred in defending Jane Carter Dawson and prosecuting her counter-claim in a divorce action filed against her by her former husband Daniel R. Dawson in the district court of Hopkins County, Texas. Appellants obtained a default judgment against Jane Carter Dawson for $4,964.59, but on motion of appellee Daniel R. Dawson the court rendered summary judgment that appellants take nothing against him. We affirm.

This appeal turns on the narrow question of whether the judgment in the Hopkins County divorce case was *res judicata* of the claim asserted by appellants against appellee in this case. Appellants' contention is that the services and expenses were "necessaries" furnished by them to Mrs. Dawson, for which the husband is liable, and that the defense of *res judicata* is not available to appellee because in her pleadings in the divorce case Mrs. Dawson did not seek recovery of attorneys' fees for the

use and benefit of her attorneys, that appellants were not, therefore, "a party to the suit," that the divorce judgment did not deny to them a recovery from the community estate, but only ordered that Mrs. Dawson pay her attorneys' fees and expenses, which she did not do, and that appellants were entitled to recover against "the community" and at no time "waived or abandoned" such right.

It appears from the summary judgment evidence that appellants filed for Mrs. Dawson in the divorce suit an answer and counter-claim in which it was alleged *inter alia* that Mrs. Dawson, being forced to employ attorneys to represent her, had contracted to pay appellants a reasonable fee, but that she had no separate or community property under her control with which to pay said fee, and that she "sues and prays judgment for her attorney's fees from the" appellee and "asks that he be required to pay all fees herein plus all costs of this action." It further appears that in the course of the trial a property settlement was agreed upon and Mr. Mullinax in open court dictated the terms thereof into the record. This agreement included the following:

"It is further agreed that the attorney's fees and expenses incurred by Mrs. Dawson in the prosecution of this case, in defense of the action brought by Mr. Dawson, be paid by her as her separate debt and obligation; and that the attorney's fees incurred by Mr. Dawson in the preparation and trial of his action and defense of the cross-action be paid by Mr. Dawson as his separate obligation."

When he had finished dictating the entire agreement, the following transpired:

"MR. MULLINAX: Now, Mrs. Dawson, you have heard the agreement dictated. Do you acknowledge to his Honor, in open court, that you are, as one of the parties, prepared to carry that agreement into execution?

MRS. DAWSON: I am, your Honor.

MR. JOHNSON (to Mr. Dawson): And are you prepared to carry it into execution?

MR. DAWSON: Yes, sir, your Honor."

The decree in the divorce case contained detailed provisions concerning child custody and division of community property, and also contained the following provisions:

"IT IS FURTHER ORDERED by the Court that Daniel R. Dawson shall pay and discharge all of the community debts owed by the parties at the time of their separation.

IT IS FURTHER ORDERED by the Court that any relief not herein granted is hereby denied.

IT IS FURTHER ORDERED by the Court that each party hereto shall pay their respective attorneys."

A leading case is Roberts v. Roberts, 144 Tex. 603, 192 S.W.2d 774 (1946). In that case the husband sued for divorce, the wife employed attorneys to defend her, the suit was dismissed upon a jury finding that the husband had not been an inhabitant of the state for one year, and the court awarded the wife judgment for $900 "due and owing to her attorneys for services rendered the wife in the divorce action." The Supreme Court held that the trial court had not erred in rendering that judgment. The court's opinion contained this significant language:

"While the judgment in this case awards the attorneys' fees to appellee, we think, under the facts, that it was fully binding on her attorneys. As her attorneys, they signed her answer alleging that appellant was liable to appellee and to them for reasonable attorneys' fees and praying that judgment be entered in their behalf for such fees. They participated in the trial and suffered a judgment to be entered awarding

the fees to appellee. Consequently, they were as much bound by it as if they had been parties to the suit. Perkins v. Terrell, Tex.Civ.App., 214 S.W. 551 (error refused); Olive-Sternenberg Lbr. Co. v. Gordon, 138 Tex. 459, 159 S.W.2d 845; Ex parte Foster, 144 Tex. 65, 188 S.W. 2d 382."

In Akin v. Akin, 276 S.W.2d 323, 326 (Tex.Civ.App., Austin 1955, writ dism'd), a suit by the husband for divorce, the wife employed attorneys Coleman Gay and Henry H. Brooks to represent her and, although the attorneys were not formal parties to the suit, the judgment provided:

"That the defendants' attorneys, Coleman Gay and Henry H. Brooks, do have and recover of and from the plaintiff, J. C. Akin, the sum of $2,000.00 as attorneys' fees, for which let execution issue."

The husband urged on appeal that the judgment as to attorneys' fees was void because the attorneys were not parties to the suit. It was held in affirming the judgment that the attorneys "were parties to this suit both literally and legally," that they were named in the pleadings, their employment alleged and the recovery specifically prayed for in their behalf. It was held that courts look beyond the nominal parties, treating all those whose interests are involved and who conduct and control the litigation as real parties; and that "by participating in the proceedings one is estopped by the judgment as to any questions actually litigated and decided therein," citing Roberts v. Roberts, supra.

See also 20 Tex.Jur.2d, Divorce and Separation, § 301, p. 626, where it is stated:

"A judgment in the suit for divorce refusing the attorney's application for fees is res judicata of his right in a subsequent action brought by him to recover the fees."

Cited in support of this statement is Branch v. Kleinecke, 3 Willson Civ.Cas. Ct.App. § 106 (1886). This principle was recognized in American Indemnity Co. v. Fellbaum, 114 Tex. 127, 263 S.W. 908, 37 A.L.R. 633 (1924), holding that a liability insurance company, by assuming to defend an action against its insured, became unconditionally bound by any judgment rendered against its insured within the limits of the policy; and in Postal Mutual Indemnity Co. v. Ellis, 140 Tex. 570, 169 S. W.2d 482 (1943), holding that an attorney in a workmen's compensation case whose fee, under the statute, is to be fixed by the trial judge, "is a party" to such suit within the statute and constitutional provision disqualifying a judge related within certain degrees to any "party" in the case. See also Schwartz v. Jacob, 394 S.W.2d 15, 21 (Tex.Civ.App., Houston 1965, writ ref'd n. r. e.), to the same effect.

Therefore, we hold that by their participation in the trial, the making of the settlement agreement and the divorce decree the appellants became bound by the provisions in the latter the same as if they were formal parties to the suit.

They argue, however, that they should not be prejudiced by their failure to reserve their right to sue the husband because to have done so would have placed them in "a conflict of interest position" in that if they had reserved the right this might have endangered or defeated the settlement. These attorneys were put to an election of either foregoing their right to look to appellee for their fees and expenses or of notifying him that they would look to him if their client failed to pay them. If this situation created a conflict between their own financial interest and those of their client, they followed the honorable and ethical course of putting their client's interest ahead of their own. This was to be expected. However, we have no authority to reward ethical conduct of attorneys by relieving them of the effects of the above mentioned principles of law. This contention is therefore overruled.

Affirmed.