**CREDIT BUREAU OF LAREDO, INC.,**
**Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 15299.

Court of Civil Appeals of Texas,
San Antonio.

Oct. 9, 1974.

Rehearing Denied Nov. 20, 1974.

Salmanson & Smith, Austin, for appellant.

John L. Hill, Atty. Gen., Joe Longley, Asst. Atty. Gen., Austin, Kathleen Durckel, Asst. Atty. Gen., Houston, for appellee.

KLINGEMAN, Justice.

Appellant, Credit Bureau of Laredo, Inc., appeals from an order of the trial court imposing penalties of $35,000 against it and Edward Miller, jointly and severally, pursuant to Article 5069, Sec. 10.01 et seq., Vernon's Tex.Rev.Civ.Stat.Ann. (1971), for alleged violation of an injunction issued approximately a year earlier. Edward Miller is not a party to this appeal, although he gave notice of appeal, and a supersedeas bond on behalf of Credit Bureau of Laredo, Inc. and Edward Miller in the amount of $35,000 was filed. This court, on March 27, 1974, dismissed the appeal of Edward Miller for failure to timely file a brief, and such judgment has now become final as to Edward Miller.

On April 11, 1972, the State of Texas brought an action in the nature of quo warranto proceeding against Edward Miller, individually and d/b/a Credit Bureau of Laredo, Inc., seeking to enjoin certain deceptive practices under Article 5069, Sec. 10.01 et seq.[1] and seeking to restrain defendants from improperly asserting corporate status. On such date, there was no such corporation as "Credit Bureau of Laredo, Inc.," but there was a corporation in existence named "Retail Merchants Association and Credit Bureau of Laredo, Inc." of which Miller was the manager. Six days after the suit was filed, the corporation changed its name to Credit Bureau of Laredo, Inc. Service was had upon Edward Miller, individually and d/b/a Credit Bureau of Laredo, Inc. On April 20, 1972, an agreed judgment was entered enjoining defendants Edward Miller, individually and d/b/a Credit Bureau

1. The deceptive practice complained of consists mainly of mailing and distribution to debtors of certain forms variously styled "Notice to Appear", "Preliminary Law Suit Listing for Civil Court", "Notice of Impending Execution", "Certificate of Assignment" and "Seven Day Official Notification."

of Laredo, Inc., their agents, servants, and employees from making the complained of representations and carrying on the complained of deceptive practices. It is seen that, at the time of the filing of the suit, there was no such corporation as Credit Bureau of Laredo, Inc., but at the time of the entry of the agreed judgment, there was a corporation with such name.

The judgment recites that defendants Edward Miller, individually and as manager of Credit Bureau of Laredo, Inc., appeared by their attorney of record Francis Maher, and that such attorney announced to the court that the defendants would no longer oppose the actions of the State in the matter and agreed to the entry of judgment against them in such case. The judgment is approved as to form by Francis Maher, attorney for defendants, and also by Edward Miller.

On March 8, 1973, the State filed its petition for penalties and on the 23rd day of March, 1973, the court, sitting without a jury, entered its order for civil penalties against Credit Bureau of Laredo, Inc. and Edward Miller, jointly and severally, in the amount of $35,000.[2]

By its first point of error, appellant asserts that the trial court erred in imposing penalties on appellant because the injunction judgment is void for want of personal jurisdiction of appellant in such suit for injunction. Appellant Credit Bureau of Laredo, Inc.'s basic contention in this regard is that it was not named as a party to the State's suit for injunction; no answer or appearance was made by it; and that no attorney appeared on its behalf or with its authorization; and such injunction proceeding was void as to it and had no effect on it. They then assert that the trial court erred in imposing penalties on it for violation of such injunction because the injunction did not apply to it, and it could not be in violation of such injunction.

Appellee asserts that the trial court correctly held that the appellant was bound by the injunction because it participated in the injunction as a real party.

■ Ordinarily, a party who is not a nominal party to an injunction proceeding is not bound by the terms of the injunction decree and cannot be convicted of contempt of court for violating the terms thereof. In the case now before us, if appellant is bound at all by the injunction proceeding, it must be on the basis of its participation in such proceeding.

Francis Maher, the attorney who signed the agreed judgment, testified that he had represented Credit Bureau of Laredo, Inc. for about 15 months, from approximately September of 1971 to November of 1972; that he was representing Credit Bureau of Laredo, Inc. when the permanent injunction here involved was entered and that he was acting as their legal representative; that he was paid by appellant for such representation; that he signed the judgment and represented to the court that he was acting as their legal representative. The president of Credit Bureau of Laredo, Inc. testified that he had actual knowledge that an injunction had been issued by the District Court of Webb County enjoining such corporation from deceptive practices. There is testimony that the court costs were paid by check of appellant.

A case closely in point on this issue is Ex parte Foster, 144 Tex. 65, 188 S.W.2d 382 (1945), a habeas corpus proceeding. Foster was committed to the custody of the Sheriff of Dallas County because he was adjudged to be in contempt of the 101st District Court for violating a permanent injunction issued by that court in Cause Number 79272–E, styled the Texas and Pacific Railroad Company v. Dallas County et al. Foster was not a party to that suit. The Supreme Court, in refusing to discharge relator and in upholding the judgment of contempt, stated: "We hold that

2. Appellant was found guilty of seven violations.

relator by virtue of his knowledge of and interest in the subject matter of the litigation involved in Cause No. 79272–E, and his participation in the proceedings therein, is bound by the judgment entered therein." The court cites with approval the language from American Indemnity Company v. Fellbaum, 114 Tex. 127, 263 S.W. 908 (1924), which reads as follows: "The courts look beyond the nominal parties, and treat all those whose interests are involved in the litigation, and who conduct and control the action or defense as real parties, and hold them concluded by any judgment which may be rendered, as, for example, those who employ counsel in the case, assume the active management of the proceeding or defense, or who pay the costs and do such other things as are generally done by parties. In other words, by participating in the proceedings one is estopped by the judgment as to any questions actually litigated and decided, therein." This rule was again approved in Cavers et al. v. Sioux Oil & Refining Company, 39 S.W.2d 862 (Tex.Comm'n App.1931, jdgmt adopted). See also Bragdon v. Wright, 142 S.W.2d 703 (Tex.Civ.App.—Texarkana 1940, writ dism'd).

■ Under these authorities, we hold that the trial court correctly held that the Credit Bureau of Laredo, Inc. participated in the injunction proceeding as a real party and was bound by the injunction.[3]

■ Appellant's second point of error is that the trial court erred in imposing a civil penalty on appellant because the statute upon which the trial court based both his injunction and the penalty he imposed for its alleged violation did not apply to appellant or to the conduct of which the State complained. In view of our holding herein that appellant voluntarily entered into an agreed judgment prohibiting certain practices therein described [4] and is bound by the

---

3. Appellee also argues that the general rule is that a corporation intended to be sued, who is sued and served in the wrong name, is bound by the judgment if the corporation fails to plead the misnomer and suffers judgment; and that a suit in the wrong corporate name is still a suit against such corporation, citing in support thereof Adams v. Consolidated Underwriters, 133 Tex. 26, 124 S.W.2d 840 (1939); and Abilene Independent Telephone and Telegraph Company v. Williams, 111 Tex. 102, 229 S.W. 847 (1921). In *Abilene*, Williams sued the Abilene Independent Telephone Company for damages and had the phone company cited by service on one Gus Klotz as local manager for the stated defendant. The attorney for Abilene Independent Telephone and Telegraph Company expressly declined to appear in its behalf, but as a friend of the court, exhibited to the court a charter showing the true name to be Abilene Independent Telephone and Telegraph Company. The court rendered judgment for plaintiff against Abilene Independent Telephone and Telegraph Company in the amount of $7,500. The phone company instituted an action to restrain the collection of the judgment and obtained a favorable judgment in this regard from the trial court, which was reversed and rendered by the Court of Civil Appeals. The Supreme Court affirmed the Court of Civil Appeals.

It is to be noted that the original name of the corporation is substantially similar to the present corporation name and contained the name "Credit Bureau of Laredo, Inc.," and that this corporation changed its name, "Retail Merchants Association and Credit Bureau of Laredo, Inc.," to "Credit Bureau of Laredo, Inc." during the pendency of the injunctive proceeding and prior to the time the injunction was entered.

4. The injunction of April 20, 1972, provides substantially as follows:

"It is therefore, ORDERED, ADJUDGED AND DECREED that the Defendants, Edward Miller, individually and d/b/a Credit Bureau of Laredo, Inc., their agents, servants, and employees desist and refrain from doing the following acts and making the following representations in the pursuit and conduct of their debt collection business within the State of Texas . . . . :

(1) Mailing, sending, or otherwise transmitting and delivering to delinquent debtors any 'Notice to Appear' commanding the recipient thereof to appear within 72 hours at Credit Bureau of Laredo, Inc., or threatening that legal proceedings will be started against him when said proceedings have never been commenced in the common and regular course of conduct of Defendants' debt collection business.

(2) Mailing, sending, or otherwise transmitting and delivering to delinquent debtors any printed form which purports to be a 'Preliminary Law Suit Listing for Civil

terms of such injunction, we do not deem it necessary to pass on appellant's second point of error. It is immaterial to this appeal as to whether such conduct violated the Deceptive Trade Practices Act, Article 5069, Secs. 10.01–10.08, in that appellant consented to the injunction whereby it is restrained from certain conduct. The issue is whether or not appellant violated the terms of the injunction.

For the reasons above we do not deem it necessary to pass on appellant's contention that the Deceptive Trade Practices Act is unconstitutional.

 Appellant has been found guilty of having knowingly violated the terms and prohibitions of the injunction by their use of seven enumerated forms and assessed civil penalties of $35,000. Appellant asserts vigorously that there are disputed fact issues as to whether they had knowingly violated the terms of the injunction,[5] and that it was entitled to a jury trial on such disputed issues of fact.

Appellant is in the debt collection business. Delinquent accounts are referred to appellant by creditors such as the Mercy Hospital after they have exhausted their own attempts to collect the account. Prior to April 20, 1972, appellant mailed a series of form letters to the delinquent debtor in an apparent effort to intimidate him into paying the debt.

On March 9, 1973, appellant was served with a precept and directed to appear on March 22, 1973, to show cause why it should not be ordered to pay the State a civil penalty of not more than $10,000 for each and every violation of said injunction as provided in Art. 5069, Sec. 10.08(c). Seven exhibits were attached to said petition for penalties. Appellant appeared as directed and promptly requested trial by jury of all disputed issues of fact. The court determined that this hearing was a contempt proceeding and that the rules of procedure relating to a civil trial did not apply. The court accordingly denied appellant's request for a jury and refused to place the witnesses under the rule as had been requested by appellant.

It is true that a proceeding for violation of an injunction is in the *nature* of a con-

---

Court' and/or shows a 'seal' and uses the word 'Civil Court' which indicates or tends to indicate that such form emanates from a bona fide court, and that it is connected and associated with an actual court and therefore simulates a form of court process, and furthermore from:

(a) Using language in any form to the effect that Defendants have conducted an investigation of the debtor's monies and property for the purpose of possibly levying upon the same to enforce payment of the debt;

(b) Using language which would lead a recipient to falsely and erroneously believe that the debt has been referred to an attorney for immediate law suit.

(3) Representing and holding out to the general public that Defendants have a valid Texas charter and certificate of authority to do business by use of the word 'Inc.' in any name under · which the Defendants may do business without a valid Texas charter or certificate of authority as is required under the laws of Texas.

(4) Mailing, sending, or in any manner transmitting or delivering any form of 'Notice of Impending Execution' which either ex-

hibits or does not exhibit a 'seal', or any form that states or implies that summons or complaint will be filed against the debtor named thereon, or stating, representing, or in any manner implying that the case will be delayed five days to allow settlements without court costs.

(5) Mailing, sending, or by any method transmitting or delivering any printed form containing the words 'Certificate of Assignment' or which uses the abbreviation 'vs.' between the creditor's name and the debtor's name so that the recipient believes or tends to believe that an actual case exists between the two parties in the form of a law suit, or any form which asserts that the debtor has seven days to make final payment of the debt or be threatened with law suit by using the following language: 'WARNING' and 'Seven Day Official Notification'."

5. Appellant asserts that such disputed fact issues include, among other things, the following: (a) whether appellant violated the terms of the injunction at all; (b) different disputed fact issues as to each violation of which it was found guilty; (c) the amount of the penalty to be assessed, if any.

tempt proceeding. It must be clearly recognized, however, that this was not a contempt proceeding, but a suit for civil penalties in the amount of $70,000. If it were a contempt proceeding, the maximum penalty a ·district court could assess would be a fine of not more than $500, or confinement in the county jail for not more than six months, or both. Article 1911a, Tex.Rev. Civ.Stat.Ann. Furthermore, it is now recognized that there is a constitutional right to a jury trial in contempt proceedings where the permissible penalty is in excess of that permitted for punishment of a petty offense. See Duncan v. Louisiana, 391 U. S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966). Serious disputed fact issues were presented as to whether appellant had knowingly violated the injunction and, if so, the amount of penalty to be assessed. Appellant was entitled to have these issues resolved by conventional trial procedure.

■ None of the forms involved herein were the same as those subject to the agreed injunction. The contents and make-up of the prohibited forms were drastically changed after the injunction in an apparent attempt to comply with same. Although the trial court refused to consider such evidence, it is shown by appellant's bill of exception that shortly after the agreed injunction were entered, appellant employed Fred Nieman, Esq., to revise the forms so as to comply with the injunction. Mr. Nieman was the General Attorney of the Associated Creditors of Texas and, thus, recognized as a knowledgable person in this field of law. He had two consultations on the revision with the Assistant Attorney General then in charge of the section of that office which handled these matters. Obviously such officer is not authorized to give advisory opinions or bind the court by same, nevertheless, this evidence was properly admissible to show appellant's good faith.

Although appellant continued to attempt to collect the delinquent accounts by use of forms mailed to the debtors, significant revisions were made in the forms printed and mailed out after the injunction. The forms "Notice of Impending Execution," "Certificate of Assignment" and "Notice to Appear" which were involved in the agreed injunction were deleted and are no longer used by appellant. All of appellant's forms are now printed on various colors of paper so that they do not give the appearance of being official documents. The "seal" was deleted from all of the forms as was the abbreviation "vs." between the creditor's name and the debtor's name. All forms are distinctly marked in bold-faced type to show that they come from appellant and that payments should be made to it. All but one of the sixteen witnesses who testified regarding any of the forms, knew that appellant had mailed same. This is best illustrated by the fact that four of the seven forms in question were mailed to Mike Hales regarding his Mercy Hospital account, and he was not concerned enough to open the envelopes. The chief concern expressed by the other debtor-witnesses was their inability to pay the debt.

State recognized that appellant is lawfully engaged in the collection of delinquent accounts. In this connection it undoubtedly had the right to make demand for payment on behalf of the respective creditors and even to file suit in its own name where the debt was assigned to appellant. None of the forms involved threaten the debtor with any illegal penalty. For example, the two forms that refer to execution state that it can be had on non-exempt property.

■ Apparently, the forms had been found to be deceptive because all of them state that civil legal action can or will be taken if the debt is not paid. This is a legitimate right to be taken against a delinquent debtor who refuses to pay, but such

practice was found deceptive here in that suits were brought on only a very small percentage of the accounts. There was no evidence in the record as to how many of those accounts were paid without the necessity of a suit or why the decision was made not to bring suit on the unpaid debts. In any event, it cannot be a deceptive practice to advise that an unpaid account will be referred to an attorney for civil action if the debtor does not respond.[6] Particularly is this so when the uncontradicted evidence is that appellant employed a full-time attorney after the injunction, and all accounts were referred to him for decision. What would the debtors gain if State prevails here and suits are required to be filed in every instance?

In view of the fact that all of the forms involved in the suit for penalties are different from those involved in the agreed injunction, we have concluded that serious issues of fact were raised as to whether the injunction has been knowingly violated by appellant, and if so, the amount of penalties that should be assessed. The judgment has become final as to Edward Miller, but the judgment is reversed as to appellant and is remanded to the trial court for a trial before a jury.

CADENA, Justice (concurring).

I concur in the result. However, I would base the holding that defendant is entitled to a jury trial solely on the fact that this is a civil suit for the recovery of statutory penalties rather than a criminal contempt proceeding. We would, by so limiting our holding, avoid the "difficult question whether a charge of" criminal contempt "requires . . . jury trial." Shillitani v. United States, 384 U.S. 364, 365, 86 S.Ct. 1531, 1533, 16 L.Ed.2d 622, 624 (1966). I do not believe that either Cheff v. Schnackenberg, 384 U.S. 373, 86

S.Ct. 1523, 16 L.Ed.2d 629 (1966), decided on the same day as *Shillatani*, nor Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), gives a definitive answer to the constitutional question.

---

6. Article 5069, Sec. 11.02(f), Tex.Rev.Civ. Stat.Ann. (Supp.1973), expressly recognizes a debt collector's right to threaten to institute civil law suit or other judicial proceedings to collect a debt.