Dismissed in Part and Reversed and Remanded in part and Memorandum
Opinion filed March 16, 2006









Dismissed in Part and Reversed and
Remanded in part and
Memorandum Opinion filed March 16, 2006.

 

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-04-00366-CV

_______________

 

TEX‑ON MOTOR CENTER, Appellant

 

V.

 

TRANSOUTH FINANCIAL CORPORATION,
ROY D. FITZPATRICK AND MARSHA J. FITZPATRICK, Appellees



_____________________________________________________



 

On Appeal from the Civil County Court
No. 4

Harris County, Texas

Trial Court Cause No. 793,269



_____________________________________________________



 

M E M O R A N D
U M   O P I N I O N








Tex-On Motor Center (ATex-On@) appeals from a temporary injunction
and a final judgment in favor of Roy and Marsha Fitzpatrick (the AFitzpatricks@) and TranSouth Financial Corporation
(ATranSouth@) in their suit for conversion
damages.  With respect to the temporary
injunction, Tex-On contends the trial court erred by refusing to grant a new
hearing.  With respect to the final
judgment, Tex-On contends there was (1) insufficient evidence to support the
damage award, and that the trial court erred by (2) permitting TranSouth and
the Fitzpatricks to receive a double recovery, (3) refusing to grant Tex-On=s plea in abatement and referral to
arbitration, (4) erroneously admitting into evidence a copy of a contempt order
with the amount of the fine redacted, (5) refusing to grant a new trial as to
all issues, and (6) submitting a damage issue based on Aloss of use.@ 
We dismiss the complaint as to the temporary injunction, reverse the
final judgment, and remand.

I. 
Factual and Procedural Background

In February 2003, the Fitzpatricks= vehicle was towed to Tex-On for
repairs to the engine.  The Fitzpatricks
initially agreed to pay $3,100 for the repairs; however, the parties dispute
whether Fitzpatrick later gave verbal consent to pay $4,960.78 for the
repairs.  In any event, after the work
was performed, Tex-On demanded $4,960.78 for the repairs.  

The Fitzpatricks refused to pay the higher price, and the
vehicle remained on Tex-On=s premises for an extended period of time.  Tex-On sent a letter to the Fitzpatricks and
TranSouth, the holder of a purchase money security interest in the vehicle,
notifying both parties that Tex-On had a worker=s lien on the vehicle and intended to
sell the vehicle if the repair costs were not paid.  

Upon receiving notice of Tex-On=s intent, TranSouth filed suit
against Tex-On and the Fitzpatricks, seeking, in part, a declaratory judgment
that TranSouth=s perfected security interest in the
vehicle was valid and enforceable, and that TranSouth was entitled to immediate
possession of the vehicle.  Tex-On filed
cross-claims against the Fitzpatricks for breach of contract, and the
Fitzpatricks filed counter-claims against Tex-On for conversion of the vehicle.

TranSouth obtained a temporary restraining order enjoining
Tex-On from selling the vehicle.  Later,
the trial court issued a temporary injunction requiring Tex-On to immediately
surrender possession of the vehicle to TranSouth.  Tex-On was served with the temporary
injunction, but before surrendering possession, it removed the engine from the
vehicle, rendering the vehicle inoperable.








TranSouth filed a motion for contempt against Tex-On,
alleging that Tex-On failed to comply with the temporary injunction.  Following a contempt hearing, the trial court
found Tex-On in contempt and assessed a fine against Tex-On in the amount of
$6,761.  The fine represented the price
Tex-On sought to charge the Fitzpatricks for repairing the vehicle plus
attorney=s fees of $1,800.  The trial court directed that the contempt
fine be paid to TranSouth for the benefit of the Fitzpatricks= account.[1]   

Subsequently, a jury trial was held on all parties= claims.  The jury found that Tex-On had converted the
vehicle and awarded conversion damages to TranSouth and the Fitzpatricks in the
respective amounts of $10,000 and $6,400. 
The jury also found against Tex-On on its cross-claim for breach of
contract.  The trial court entered
judgment on the jury=s verdict.  

Tex-On filed a motion for new trial based on newly discovered
evidence.  The trial court granted Tex-On=s motion for new trial on its breach
of contract claim against the Fitzpatricks, but denied the motion as to all
other claims.  The trial court signed a
modified judgment severing Tex-On=s breach of contract claim against
the Fitzpatricks, and judgment was entered as to all other claims.  Tex-On filed this appeal from the modified
judgment.

II. 
Temporary Injunction 








In its first issue, Tex-On challenges the trial court=s order overruling the motion to
vacate the temporary injunction and grant a Anew trial.@ 
However, we are without jurisdiction to review the order concerning the
temporary injunction.  In addition, the
trial court=s final judgment rendered Tex-On=s complaint relating to the temporary
injunction  moot.

In general, a judgment must be final in order for a party to
pursue an appeal of the judgment.  Lehmann
v. Har-Con Corp., 39 S.W.3d 191, 195 (Tex. 2001).  However, an interlocutory appeal of an order
denying a motion to dissolve a temporary injunction is statutorily authorized.[2]  Tex.
Civ. Prac. & Rem. Code Ann. ' 51.014(a)(4) (Vernon Supp.
2005).  An interlocutory appeal is an
accelerated appeal for which notice must be filed within twenty days after the
order is signed.  Tex. R. App. P. 26.1(b) & 28.1.  Here, because Tex-On failed to timely perfect
an interlocutory appeal of the trial court=s order, we now lack jurisdiction to
address the complaint.  See Bayoud v.
Bayoud, 797 S.W.2d 304, 312 (Tex. App.CDallas 1990, writ denied); Cellular
Mkt., Inc. v. Houston Cellular Tel. Co., 784 S.W.2d 734, 735 (Tex. App.CHouston [14th Dist.] 1990, no
writ).  Moreover, the trial court has
already tried the cause on the merits and entered final judgment.  A final judgment renders an appeal relating
to a temporary injunction moot.  See
Isuani v. Manske-Sheffield Radiology Group, P.A., 802 S.W.2d 235, 236 (Tex.
1991) (per curiam).  Accordingly, we
dismiss the portion of Tex-On=s appeal concerning the temporary injunction as moot and for
want of jurisdiction.

II. 
Final Judgment








In its remaining issues, Tex-On appeals from the final
judgment awarding TranSouth and the Fitzpatricks the respective amounts of
$10,000 and $6,400 for conversion damages. 
In its third and fifth issues, Tex-On contends that the trial court
erred by refusing to grant its plea in abatement and motion for new trial.  In its second, fourth, sixth, and seventh
issues, Tex-On challenges the admission of evidence and the damages awarded for
conversion.  We will first address the
plea in abatement issue as it is relevant to the entire judgment.  We will next address the denial of the motion
for new trial.  Because we ultimately
conclude the trial court abused its discretion by denying the motion for new
trial, we do not reach Tex-On=s remaining issues challenging the admission of evidence and
the damages award.

A.        Motion to Abate

In its third issue, Tex-On contends that the trial court
erred by refusing to grant its plea in abatement wherein Tex-On sought referral
of the matter to arbitration.  Tex-On
argues that it was entitled to resolution of the dispute through binding
arbitration because the repair contract signed by Fitzpatrick provided that
disputes between the parties were to be resolved by arbitration.

Pursuant to Texas Rule of Civil Procedure 175, a non-jurisdictional
plea in abatement is waived if it is not urged before trial on the merits.  See
Tex. R. Civ. P. 175; Garcia v. Texas Employers= Ins. Ass=n, 622 S.W.2d 626, 630 n.3 (Tex. App.CAmarillo 1981, writ ref=d n.r.e.).  Although Tex-On argues that Athe request to abate was timely,@ the appellate record fails to show
that a motion to abate was filed in the trial court or that the motion was
brought to the court=s attention prior to trial. 
Therefore, we conclude that Tex-On has failed to preserve this issue for
review.  Accordingly, we overrule Tex-On=s third issue.

B.        Motion for New Trial








In its fifth issue, Tex-On contends that the trial court
erred by refusing to grant a new trial as to all issues based on newly
discovered evidence.  At trial, Tex-On=s employee, Joe Caney, testified that
he called Roy Fitzpatrick on March 7, 2003 and that Fitzpatrick agreed to pay
$4,968.71 for the work to be performed by Tex-On.  Tex-On also introduced a garage repair order
which indicates that on March 7, 2003 at 8:40 a.m., Fiztpatrick agreed during a
telephone conversation to pay $4,960.78 for the work.  However, Fitzpatrick testified that he did
not have a telephone conversation with representatives from Tex-On on March
7.  

At the hearing on the motion for new trial, Tex-On argued
that newly discovered evidence proved that Fitzpatrick committed perjury during
trial.  Specifically, Tex-On argued that
Fitzpatrick=s cellular phone records, which were
obtained after trial, showed that contrary to his testimony, he received a
four-minute phone call from Tex-On the day he allegedly agreed to the higher
price for the repairs.

We review a trial court=s ruling on a motion for new trial
based on newly discovered evidence for an abuse of discretion.  Jackson v. Van Winkle, 660 S.W.2d 807,
809 (Tex. 1983), overruled on other grounds by Moritz v. Preiss, 121
S.W.3d 715 (Tex. 2003).  A trial court
abuses its discretion when it acts in an arbitrary and unreasonable manner or
without reference to any guiding principles. 
Cire v. Cummings, 134 S.W.3d 835, 838B39 (Tex. 2004). 

A party seeking a new trial based on newly discovered
evidence must show that (1) the evidence has come to his knowledge since trial,
(2) the failure to discover the evidence before trial was not due to lack of
diligence, (3) the new evidence is not cumulative, and (4) the new evidence is
so material that it would probably produce a different result if a new trial
were granted.  Jackson, 660 S.W.2d
at 809.  








Here, the trial court found the first three criteria were
satisfied, but that the new evidence was material only to Tex-On=s breach of contract claim against
the Fitzpatricks.  The trial court
therefore granted Tex-On=s motion for a new trial as to the breach of contract claim,
but denied the motion as to the conversion claims.  The trial court then severed the breach of
contract claim from the conversion claims, and entered final judgment on the
conversion claims.  Although we question
the trial court=s determination that the cell phone records satisfied the
first three criteria for granting a new trial based on newly discovered
evidence, TranSouth and the Fitzpatricks do not appeal the trial court=s order granting a new trial on the
breach of contract claim.  The trial
court specifically based its ruling on the fourth criteria.[3]  Tex-On contends that the trial court abused
its discretion with respect to the fourth criteria by arbitrarily finding the
evidence material to Tex-On=s breach of contract claim but immaterial to TranSouth=s and the Fitzpatricks= conversion claims against
Tex-On.  We agree.

At trial and at the hearing on the motion for a new trial,
counsel for TranSouth and the Fitzpatricks argued that the jury could find
conversion based solely on Tex-On=s removal of the engine in violation
of the temporary injunction order.[4]  In denying Tex-On=s motion for a new trial with respect
to conversion, the judge found that the jury=s verdict was based on Tex-On=s removal of the engine, and
concluded that the new evidence concerning repair authorization made Ano difference whatsoever@ with respect to the conversion
claims.  This finding was based on an
incorrect characterization of the law.

The purpose of a temporary injunction is to Apreserve the status quo of the
litigation=s subject matter pending a trial on
the merits.@ 
Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002).  The customary proceeding for the violation of
an order granting injunctive relief is a contempt proceeding.  Credit Bureau of Laredo, Inc. v. State,
515 S.W.2d 706, 710B11 (Tex. Civ. App.CSan Antonio 1974), aff=d, 530 S.W.2d 288 (Tex. 1975).  In contrast, an act of conversion gives rise
to a cause of action for damages and is defined as Athe wrongful exercise of dominion and
control over another=s property in denial of or inconsistent with his rights.@ Green Intern, Inc. v. Solis,
951 S.W.2d 384, 391(Tex. 1997).








Here,
TranSouth obtained a temporary injunction requiring Tex-On to surrender
possession of the vehicle.[5]  The merits of the underlying conversion
claims were not, however, decided by issuance of the order. Therefore, a
violation of the order did not render Tex-On automatically liable for
conversion damages.  

Instead,
any liability for conversion was based on TranSouth=s and the Fitzpatricks= underlying conversion causes of
action.  TranSouth alleged in its
pleadings that Tex-On converted its security interest by acting inconsistently
with TranSouth=s rights as the holder of a
first-priority security interest.  The
Fitzpatricks also alleged conversion against Tex-On, claiming that they were
entitled to possession of the vehicle. 
Tex-On=s defense to the conversion claims
was that it held a priority worker=s lien entitling it to possession of
the vehicle.[6]









Section
70.001(a)(1) of the Texas Property Code provides in relevant part that a worker
who repairs a vehicle may retain possession until the amount due under the
contract for the repairs is paid.  Tex. Prop. Code Ann. ' 70.001(a)(1) (Vernon Supp.
2005).  Therefore, the new evidence
regarding authorization for increased repair costs was relevant to whether
Tex-On had a right to retain possession of the vehicle.  In light of the new evidence, if a jury found
that the Fitzpatricks authorized the additional cost of the repairs and
subsequently breached the contract by refusing to pay for the repairs, Tex-On
would have established that it had a valid lien on the vehicle.  See id; Drake Ins. Co. v. King,
606 S.W.2d 812, 818 (Tex. 1980) (only work authorized by owner gives rise to
possessory lien).  If Tex-On had a valid
lien, then it had a right to retain possession of the vehicle and did not
wrongfully exercise control of the vehicle in a manner inconsistent with the
rights of TranSouth or the Fitzpatricks. 
See Tex. Bus. & Com.
Code Ann. ' 9.333(b) (Vernon 2002) (providing in relevant part that A[a] possessory lien on goods has
priority over a security interest in the goods@); Tex.
Prop. Code Ann. ' 70.001 (granting a possessory worker=s lien on a vehicle until the amount
due under the contract for repairs is paid); Solis, 951 S.W.2d at 391
(defining conversion as the wrongful exercise of control over another=s property that is inconsistent with
the property owner=s rights).  A finding
that the Fitzpatricks authorized the repairs and Tex-On held a valid worker=s lien on the vehicle would thus negate
TranSouth=s and the Fitzpatricks= conversion claims.  Therefore, the evidence regarding
authorization for increased repair costs cannot be material to Tex-On=s breach of contract claim without
also being material to TranSouth=s and the Fitzpatricks= conversion claims.

The
trial court acted arbitrarily and without reference to guiding principles by
finding that evidence material to the breach of contract claim was not also
material to the conversion claims. 
Accordingly, the trial court abused its discretion by denying the motion
for new trial with respect to the conversion claims.  We sustain Tex-On=s fifth issue. 

We
reverse the trial court=s judgment and remand the case for further proceedings consistent
with this opinion. 

 

/s/        Charles
W. Seymore

Justice

 

Judgment rendered and Memorandum
Opinion filed March 16, 2006.

Panel consists of Justices Edelman,
Seymore, and Guzman.

 

 











[1]  We note that a
private party cannot recover damages in a contempt proceeding.  Galtex Prop. Investors, Inc., v. City of
Galveston, 113 S.W.3d 922, 928 (Tex. App.CHouston
[14th Dist.] 2003, no pet.).  In
addition, the maximum penalty a district court can assess under its criminal
contempt power is a fine of $500 or six months confinement in the county jail.  Tex.
Gov=t Code Ann. ' 21.002(b) (Vernon 2004).  However, Tex-On did not seek mandamus relief
from the trial court=s contempt order, and the validity of a contempt order
may not be reviewed on direct appeal.  See
Rosser v. Squier, 902 S.W.2d 962, 962 (Tex. 1995); Galtex, 113
S.W.3d at 927. 





[2]  Although
Tex-On=s motion was entitled ADefendant=s Motion for a New Trial,@ Tex-On requested that the trial court vacate the
order granting temporary injunctive relief and grant a rehearing.  Accordingly, we will treat Tex-On=s motion as a motion to dissolve the temporary
injunction.  See Cellular Mkt. Inc. v.
Houston Cellular Tel. Co., 784 S.W.2d 734, 735 (Tex. App.CHouston [14th Dist.] 1990, no writ) (holding that a Amotion to set aside was essentially a motion to
dissolve the temporary injunction@).





[3]  Because the
trial court specifically based its ruling on the fourth criteria, we do not
address the other three criteria.





[4]  Tex-On was
held in contempt for removing the engine of the vehicle in violation of the
order granting temporary injunctive relief. 
The contempt order was then introduced as evidence at trial for the
conversion claims, and both TranSouth and the Fitzpatricks argued at closing
that because Tex-On was held in contempt, the removal of the engine was an act
of conversion. 





[5]  An applicant
for a temporary injunction must plead and prove the following: (1) a cause of
action; (2) a probable right to the relief sought; and (3) a probable,
imminent, and irreparable injury in the interim.  Butnaru v. Ford Motor Co., 84 S.W.3d
198, 204 (Tex. 2002).





[6]  Although
TranSouth, the Fitzpatricks, and Tex-On all claimed that they were entitled to
possession, the jury was not instructed to determine their respective rights in
the vehicle.  In consequence, the jury
assessed conversion damages based on the retail value of the car to both
TranSouth and the Fitzpatricks. 
Additionally, the trial court had previously held Tex-On in contempt and
ordered it to pay damages to TranSouth for the benefit of the Fitzpatricks= account in an amount reflecting the cost of the
engine and attorney=s fees.  It is
not clear from the record which party now has possession of the car.  If the Fitzpatricks also received the car
with the repaired engine, they obtained a quadruple recovery.  In its second issue, Tex-On contends the
final damages awarded for conversion constituted a double recovery in light of
the prior contempt award.  However,
because we conclude that the trial court abused its discretion in granting a
new trial as to the breach of contract claim but not the conversion claims, we
do not reach Tex-On=s second issue.