Ex parte Gerald W. JOHNSON.

No. C–1635.

Supreme Court of Texas.

July 6, 1983.

David H. Berg, Houston, for relator.

Bobbie Bayless, Houston, Jim Mattox, Atty. Gen., Laurie Martin, Asst. Atty. Gen., Austin, for respondent.

McGEE, Justice.

Relator, Dr. Gerald W. Johnson, brought this original habeas corpus proceeding after the district court held him in contempt and committed him to jail for thirty days for failure to comply with the court's "turn-over" order entered pursuant to article 3827a of the Texas Revised Civil Statutes. We order Relator discharged.

A judgment was rendered against Johnson in February, 1982. The judgment creditors thereafter instituted a number of post-judgment proceedings to collect the judgment, including an Application for Turnover Relief filed pursuant to article 3827a. That statute authorizes a court to order a judgment debtor to turn over certain property, documents, and records to be applied towards satisfaction of the judgment. Johnson received notice on May 10, 1982 that a hearing would be conducted that day on the Application for Turnover Relief. Johnson did not attend the hearing, but was represented by his attorney. At the conclu-

sion of the hearing, the court ordered Johnson to turn over certain assets, documents, and records to the registry of the court and to the judgment creditors. The Turnover Order was not signed until May 13, 1982, and required compliance by 2:00 p.m., May 14, 1982. The order was lengthy and detailed, and specifically directed Johnson to produce assets and records located outside as well as inside the state of Texas.

On May 21, the judgment creditors filed a Motion for Contempt which alleged specific violations of the turnover order. Johnson was personally served on June 1, 1982, with a Motion for Contempt and a Show Cause Order directing him to appear on June 14, 1982 to show cause why the motion for contempt should not be granted. On advice of his attorney, Johnson did not personally appear at the contempt hearing, but was represented by his attorney. Testimony was taken which indicated Johnson had not complied with the turnover order. Johnson's attorney did not cross-examine the witness, and no testimony was offered on Johnson's behalf. The court found Johnson guilty of contempt and sentenced him to thirty days' confinement in the Harris County jail.

This is a case of constructive criminal contempt. Johnson's confinement was ordered pursuant to article 1911a, Tex.Rev. Civ.Stat., as punishment for his failure to comply with a court order which was to be performed outside the presence of the Court. *See Ex parte Werblud,* 536 S.W.2d 542, 546–47 (Tex.1976). The habeas corpus relief sought by Johnson is a collateral attack upon that contempt judgment.

## A. ARTICLE 3827a

Johnson first argues his confinement violates due process because he cannot be held in contempt for violating a void order. Johnson contends the Turnover Order was void for three reasons. First, article 3827a, the "Turnover Statute," does not require notice and hearing to the judgment debtor prior to entry of the turnover order. Second, the court had no power to order Johnson to turn items directly over to the judgment creditors instead of the constable or sheriff. Finally, the order was impossible to comply with on its face, and alternatively, Johnson was involuntarily unable to comply.

Article 3827a provides, in part:

(a) A judgment creditor whose judgment debtor is the owner of property, including present or future rights to property, which cannot readily be attached or levied on by ordinary legal process and is not exempt from attachment, execution, and every type of seizure for the satisfaction of liabilities, is entitled to aid from a court of appropriate jurisdiction by injunction or otherwise in reaching the property to satisfy the judgment.

(b) The court may order the property of the judgment debtor referred to in Subsection (a) of this section, together with all documents or records related to the property, that is in or subject to the possession or control of the judgment debtor to be turned over to any designated sheriff or constable for execution or otherwise applied toward the satisfaction of the judgment. The court may enforce the order by proceedings for contempt or otherwise in case of refusal or disobedience.

Article 3827a is a post-judgment relief statute designed to assist judgment creditors in securing satisfaction of a final judgment. The statute authorizes a court to order a judgment debtor to turn over certain property, documents, and records which are otherwise difficult of attachment to be applied towards satisfaction of a judgment. Article 3827a, in conjunction with Rule 621a and Rule 737 of the Texas Rules of Civil Procedure, rounds out Texas' statutory equivalent to what was previously known in equity as a creditor's bill. *See, e.g., G.H. & San Antonio R.R. Co. v. Louisa McDonald,* 53 Tex. 510, 515 (1880); *Thurber Const. Co. v. Kemplin,* 81 S.W.2d 103, 109 (Tex.Civ.App.—Austin 1935, writ dism'd). *See generally,* Clayton, *Creditor's Bills in*

*Texas,* 5 Tex.L.Rev. 262 (1927); Pomeroy, *Equity Jurisprudence* § 1415 (5th ed. 1941).

■ We do not decide whether article 3827a is constitutionally infirm absent a requirement of notice and hearing prior to issuance of a turnover order. It is undisputed Johnson received notice on the morning of May 10 that a hearing would be held that day on the judgment creditors' Application for Turnover Relief. Johnson was represented by counsel at that hearing, and counsel noted his objection to conducting the hearing that day. Since the trial judge determined to proceed with the hearing, the proper avenue of relief would have been motion to modify the court's turnover order.[1] *Herring v. Houston National Exchange Bank,* 113 Tex. 337, 255 S.W. 1097, 1103 (1923).

Johnson next asserts he cannot be held in contempt for violating an order which the court had no power to enter. Specifically, Johnson contends that article 3827a, subsection (b) does not authorize a court to order a judgment debtor to turn items directly over to a judgment creditor, and therefore the Turnover Order was void.

The language at issue is found in subsection (b) as follows:

> The court may order the property of the judgment debtor referred to in Subsection (a) of this section, together with all documents or records related to the property . . . *to be turned over to any designated sheriff or constable for execution or otherwise applied towards satisfaction of the Judgment* . . . (emphasis added).

Johnson contends this language requires a judgment debtor to turn property, documents, and records over to a sheriff or constable, who may then levy execution or otherwise apply them to satisfaction of the judgment. The judgment creditors, on the other hand, argue the language authorizes the court to order either 1) that the items be turned over to a sheriff or constable for execution, or 2) that the items be otherwise applied to satisfaction of the judgment.

At least one commentator has suggested the statute allows turnover directly to judgment creditors in certain circumstances. Hittner, *Texas Post-Judgment Turnover and Receivership Statutes,* 45 Tex.B.J. 417, 419 (1982). The report of the House Committee on Judicial Affairs does not support this view, however. That report states:

> The changes which [the bill] makes are open-ended in that they allow a judgment creditor to get aid in collection from the Court *in the form of an order which requires the debtor to bring to the Court all documents and property used to satisfy a judgment.* The actual effect of the bill is to require the burden of production of property which is subject to execution to be placed with the debtor instead of a creditor attempting to satisfy his judgment. . .

House Comm. on Judicial Affairs, Bill Analysis, Tex.H.B. 1260, 66th Leg. (1979) (emphasis added).

■ In light of this language, we cannot presume the legislature intended article 3827a to deny judgment debtors any measure of judicial protection in post-judgment collection proceedings. The potential for error or abuse where turnover is ordered directly to judgment creditors is obvious, considering that the statute allows ex parte entry of the order without notice and hearing. *Cf. Finberg v. Sullivan,* 634 F.2d 50 (3d Cir.1980); *Brown v. Liberty Loan Corp. of Duval,* 539 F.2d 1355 (5th Cir.1976), *cert.*

---

1. It is clear, however, that Johnson was not unfairly surprised by the court's order. The judgment rendered against Johnson in February 1982 put him on notice that post-judgment collection proceedings would follow. *Endicott-Johnson Corp. v. Encyclopedia Press, Inc.,* 266 U.S. 285, 288–290, 45 S.Ct. 61, 62–63, 69 L.Ed. 288 (1924); *Pitts v. Dallas Nurseries Garden Center, Inc.,* 545 S.W.2d 34, 37 (Tex.Civ.App.—Texarkana 1976, no writ). A post-judgment deposition to discover Johnson's assets was conducted April 20. An Application to Set Aside Fraudulent Conveyances and To Reach Amount in Excess of Homestead Exemption was filed concurrently with the Application for Turnover Relief. Johnson received notice on May 10 of the hearings on these applications, and although he failed to personally appear, he was represented by his attorney. Turnover relief was granted orally on May 10, and Johnson does not disavow knowledge of the court's action on that day.

*denied,* 430 U.S. 949, 97 S.Ct. 1588, 51 L.Ed. 797 (1977). A debtor who in good faith complies with an order to turn items directly over to a judgment creditor may be denied any opportunity to assert defenses should the judgment creditor promptly or improperly dispose of the items. Such practice would not promote fair and orderly administration of justice. The trial court erred in ordering turnover directly to judgment creditors.

Because this habeas corpus proceeding is a collateral attack, however, a determination must be made whether the court's error rendered the turnover order void or voidable. Only if the turnover order was void may Johnson successfully challenge his confinement on this ground.

■ The order was lawfully issued by a court having jurisdiction over the parties and subject matter; the court therefore had power to render the order. Although it was error to order turnover directly to judgment creditors, such error went to the manner in which the court exercised its power under article 3827a, and not to the power itself. *Ex parte Rhodes,* 163 Tex. 31, 352 S.W.2d 249, 250 (1961). The order was not void, but voidable, and Johnson had a legal duty to comply with it until ordered otherwise. *Id.* Johnson's contempt judgment is not susceptible to collateral attack on this ground.

■ Finally, Johnson asserts the turnover order was void because it was impossible to comply with on its face. Relator contends the order required him to retrieve, simultaneously, items located both in the state and out of state and deliver the same items to different parties and locations all within one day. We do not agree the order was facially impossible of compliance.

The order was divided into three sections ordering Johnson to turn over the items as follows:

1. [A] complete and current accounting of and any and all documents and records which are in or subject to the possession or control of the judgment Debtors relating to ... [followed by a list of twelve items]—

2. [R]eturn the following items to this State and that all cash included therein be turned over to the registry of the Court ... [followed by a list of six items, some identical to those in Part One]—

3. [T]urn over to Plaintiffs ... the items, other than cash which is to be turned over as previously stated in this Order, specified below ... [followed by a list of ten items, some identical to those listed in the first two parts].

The order was lengthy and substantial. It presented the possibility Johnson would have to retrieve items from different geographical locations in a short period of time. Nonetheless, the order did not require Johnson to turn over the same items to different persons or locations simultaneously. It required a complete accounting and a return of items to the state, with cash assets to be deposited in the registry of the court, and the non-monetary items turned over to judgment creditors.

■ Alternatively, Johnson asserts that even if the order was not facially impossible to comply with, the contempt judgment was nonetheless void because Johnson was involuntarily unable to comply. Although involuntary inability to comply is a valid defense to contempt, Johnson did not present evidence or testify to this matter in the show cause hearing, and we do not consider that argument here. The time and place for testimony as to impossibility of compliance with the court's order is in the trial court where the matter is being considered. *See Ex parte Gonzales,* 414 S.W.2d 656, 657 (Tex.1967); *Ex parte Testard,* 101 Tex. 250, 106 S.W. 319, 320 (1908). *See generally* Greenhill & Beirne, *Habeas Corpus Proceedings in the Supreme Court of Texas,* 1 St. Mary's L.J. 1 (1969).

## B. TRIAL IN ABSENTIA

Finally, Johnson asserts his confinement violates due process because he was tried and sentenced in absentia, without a find-

ing that he voluntarily waived his right to be present at trial. Johnson contends this was a violation of his sixth amendment right to confrontation guaranteed by the due process clause of the fourteenth amendment, as well as a violation of article 33.03 of the Texas Code of Criminal Procedure. We agree.

■ Contempt proceedings in Texas have been characterized as quasi-criminal proceedings which should conform as nearly as practicable to those in criminal cases. *Deramus v. Thornton,* 160 Tex. 494, 333 S.W.2d 824, 829 (1960); *Ex parte Scott,* 133 Tex. 1, 123 S.W.2d 306, 311 (1939). Because contempt proceedings are triggered by actions which defy the state's authority and entail possible penal sanctions, Texas courts have consistently held that alleged constructive contemnors are entitled to procedural due process protections before they may be held in contempt.[2]

■ Similarly, the United States Supreme Court generally has regarded the offense of contempt as *sui generis,* falling somewhere between civil and criminal classification. In past decisions, the Court frequently emphasized that procedural safeguards for contempt do not derive from the sixth amendment, but arise under traditional notions of due process. *Levine v. United States,* 362 U.S. 610, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1960); *Green v. United States,* 356 U.S. 165, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958); *Blackmer v. United States,* 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375 (1932). More recently, however, the Court has indicated that the characterization of a proceeding as *sui generis* or "quasi-criminal" is of no consequence in determining the applicability of criminal due process requirements. *See In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (right to "proof beyond a reasonable doubt" standard in commitment proceedings for juveniles accused of crime);

*Bloom v. Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968) (right to jury trial in proceedings for "serious" criminal contempts). Instead, the determination of whether criminal due process rights apply turns on whether the proceeding is penal in nature.

In *State v. Santana,* 444 S.W.2d 614 (Tex. 1969) (Pope, Smith and Steakley, J.J., dissenting), *rev'd sub nom,* 397 U.S. 596, 90 S.Ct. 1350, 25 L.Ed.2d 594 (1970), for example, the issue was whether juveniles tried for delinquency were entitled to the criminal standard of "proof beyond a reasonable doubt" in commitment proceedings. At that time, such proceedings were characterized by applicable statutes as civil trials. *See* Tex.Rev.Civ.Stat. art. 2338–1, sec. 13(d) (repealed by Acts 1973, 63rd Leg. p. 1485, ch. 544, § 3). This Court declined to extend the right to a "proof beyond a reasonable doubt" standard to such trials because juvenile matters were traditionally classified as "*sui generis* and ... tried as civil cases ...." 444 S.W.2d at 622. The United States Supreme Court subsequently reversed our holding in *Santana.* The Court ruled that the possibility of a punitive deprivation of personal liberty in juvenile proceedings required criminal due process protections for the accused, regardless of the "civil" label of the proceedings. *Santana v. Texas,* 397 U.S. 596, 90 S.Ct. 1350, 25 L.Ed.2d 594 (1970), ordering reversal in accordance with *In re Winship,* 397 U.S. 358, 365, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1969); *see also In re Gault,* 387 U.S. 1, 49, 50, 87 S.Ct. 1428, 1455, 1456, 18 L.Ed.2d 527 (1967).

Earlier, in *Bloom v. Illinois, supra,* the Supreme Court stated "criminal contempt is a crime in every fundamental respect," and held the sixth amendment right to jury trial was constitutionally guaranteed to alleged criminal contemnors in cases of "serious"

---

**2.** *See e.g., Ex parte Gordon,* 584 S.W.2d 686, 688 (Tex.1979) (reasonable notice); *Ex parte Hiester,* 572 S.W.2d 300, 302 (Tex.1978) (right to assistance of own counsel if requested); *Ex parte Werblud,* 536 S.W.2d at 542, 547–48 (sixth amendment right to jury trial for "serious" contempts; fifth amendment right against

self-incrimination); *Ex parte Slavin,* 412 S.W.2d 43, 44 (Tex.1967) (where violation of court order alleged, order must have been written, clear, and unambiguous); *Ex parte Ratliff,* 117 Tex. 325, 3 S.W.2d 406, 406 (1928) (hearing on merits of charge with right to present defenses and explanations).

contempts. 391 U.S. at 201, 211, 88 S.Ct. at 1481, 1487; *see also Muniz v. Hoffman,* 422 U.S. 454, 95 S.Ct. 2178, 45 L.Ed.2d 319 (1975), and cases cited therein. Application of this sixth amendment right in a criminal contempt proceeding clearly indicates that other sixth amendment protections may be available to criminal contemnors.[3] *See Atkins v. Snyder,* 597 S.W.2d 779, 782–83 (Tex. Civ.App.—Fort Worth 1980) (Massey, C.J., concurring); *Ex parte Stanford,* 557 S.W.2d 346, 349 (Tex.Civ.App.—Houston [1st Dist.] 1977).

In *Ex parte Werblud,* 536 S.W.2d 542 (Tex.1976), we observed that "[m]any constitutional rights are accorded criminal contemnors ..." *Id.* at 547. Werblud was tried for constructive criminal contempt for failure to obey a court order enjoining operation of his rendering plant. At trial, the court compelled Werblud to testify despite his objection that, as a criminal defendant, he was entitled to fifth amendment protection against self-incrimination. Werblud was found guilty of constructive criminal contempt and fined $1000. His failure to pay the fine resulted in his incarceration, and he subsequently sought habeas corpus relief in this Court. We granted Werblud's application. Relying on *Bloom,* we held Werblud was entitled to assert the fifth amendment privilege because a trial for criminal contempt is an inherently criminal proceeding. 536 S.W.2d at 548; *see Bloom v. Illinois,* 391 U.S. at 201, 88 S.Ct. at 1481.

■ The right to be present at trial and confront witnesses is fundamental and essential to a fair trial. *Pointer v. Texas,* 380 U.S. 400, 405, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965); *Kirby v. United States,* 174 U.S. 47, 55, 19 S.Ct. 574, 577, 43 L.Ed. 890 (1899). The right is protected under Texas law by article 1, section 10 of the Texas Constitution. *See also* Tex.Code Crim.Pro.Ann.

§ 33.03; *Lusk v. State,* 432 S.W.2d 923, 924–25 (Tex.Cr.App.1968). It is also protected under the sixth amendment of the United States Constitution against state infringement through the due process clause of the fourteenth amendment. *Pointer v. Texas,* 380 U.S. at 413, 85 S.Ct. at 1073.

We perceive no meaningful distinction between an individual's rights which are at stake in a constructive criminal contempt hearing under article 1911a and those at stake in an ordinary criminal trial where confinement is a possible penal sanction. Accordingly, we hold persons charged with criminal contempt pursuant to article 1911a are constitutionally guaranteed the right to be present at trial and confront witnesses.

■ Respondents, however, urge that Johnson's failure to appear at the show cause hearing constituted a waiver of any right he had to be present at trial. We do not agree. It is the burden of the moving party, not the accused, to affirmatively demonstrate that a defendant in a criminal proceeding had sufficient notice to appreciate the criminal nature of the proceeding against him and that he has knowingly, intelligently, and voluntarily waived his right to be present and participate at trial. *See Argersinger v. Hamlin,* 407 U.S. at 25, 92 S.Ct. at 2006; *Bloom v. Illinois,* 391 U.S. at 205, 88 S.Ct. at 1484; *Cooke v. United States,* 267 U.S. 517, 537, 45 S.Ct. 390, 395, 69 L.Ed. 767 (1925). Courts, moreover, must exercise due care to ensure the accused is aware of the processes taking place and of his right and obligation to be present. *See Cureton v. United States,* 396 F.2d 671, 676 (D.C.Cir.1968). This is particularly true in cases of constructive criminal contempt where the alleged contemptuous act has taken place outside the presence of the court.

---

**3.** The fact the maximum punishment under art. 1911a denominates contempts proscribed under that statute as "petty," *Werblud,* 536 S.W.2d at 542, is of no consequence in the instant case. With the exception of the right to trial by jury, sixth amendment rights are not dependent upon whether the offense is classified as "serious" or "petty." *See Argersinger*

*v. Hamlin,* 407 U.S. 25, 28, 92 S.Ct. 2006, 2008, 32 L.Ed.2d 530 (1972). The distinction between "petty" and "serious" contempts derives from historical interpretation of the sixth amendment right to jury trial. *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

■ In this case, there is no showing in the record that Johnson was even present for commencement of trial. As a result, there could be no affirmative finding by the trial court that Johnson waived his right to be present and participate in trial. *Cf.* Tex.Code Crim.Pro. art. 33.03. Absent such a finding, we cannot presume Johnson knowingly, intelligently, and voluntarily waived his right to be present.

We do not suggest alleged criminal contemnors may frustrate the ends of justice by intentionally failing to appear at show cause hearings. In view of the record before us, it may well be that Johnson's failure to appear at the show cause hearing constitutes an additional contempt[4] for which he may be tried in addition to any retrial that may be had on the original alleged contempt. Habeas corpus is not, after all, a bar to reprosecution of any offense.

■ Accordingly, we hold that where an individual is cited for criminal contempt and fails to appear at the appointed time and place, the proper procedure is to bring the individual into court under a capias or writ of attachment. This requirement imposes no substantial burden on the trial court because persons tried and sentenced in absentia must be arrested and brought before the court sooner or later. The trial court erred in proceeding with the show cause hearing in the absence of Johnson. Johnson is ordered discharged.

ROBERTSON, J., dissents.

I respectfully dissent. Relator was personally served with a Motion for Contempt and a Show Cause Order which ordered him to appear and show cause why he should not be held in contempt. Notwithstanding this command of the court, Relator chose instead to rely on advice of counsel, failed to appear at the designated time and place, and sent counsel in his stead. Where a party deliberately absents himself from a show cause hearing but is represented by counsel, he should not be heard to complain he was denied due process merely because the court failed to make a formal finding his absence was voluntary.

As the majority states, the offense of contempt generally has been regarded by the United States Supreme Court as *sui generis,* falling somewhere between civil and criminal classification. In past decisions, that court frequently emphasized that procedural safeguards for contempt do not derive from the sixth amendment, but arise under traditional notions of due process. *Levine v. United States,* 362 U.S. 610, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1959); *Green v. United States,* 356 U.S. 165, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958); *Blackmer v. United States,* 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375 (1932); *Myers v. United States,* 264 U.S. 95, 44 S.Ct. 272, 68 L.Ed. 577 (1924).

In *Blackmer v. United States, supra,* the court rejected petitioner's argument it was a violation of due process to proceed with a criminal contempt hearing where petitioner was notified to appear personally and failed to do so:

> This argument misconstrues the nature of the proceeding. "While contempt may be an offense against the law and subject to appropriate punishment, certain it is that since the foundation of our government proceedings to punish such offenses have been regarded as *sui generis* and not 'criminal prosecutions' within the sixth amendment or common understanding." [Citations omitted]. *The requirement of due process in such case is satisfied by suitable notice and adequate opportunity to appear and be heard.*

284 U.S. at 440, 52 S.Ct. at 256. (emphasis added).

Relator argues *Blackmer* is not controlling because the premise of that decision was later rejected by the United States Supreme Court in *Bloom v. Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1967). Relator contends that criminal contempt convictions are now considered criminal prosecutions to which sixth amendment pro-

4. Tex.Rev.Civ.Stat.Ann. art. 1911a, § 1.

tections apply. Thus, the fact Relator was tried and sentenced in absentia violated the confrontation clause of the sixth amendment. Two Texas courts of appeals have expressed reservations about proceeding with a show cause hearing in the absence of the accused. *See, Atkins v. Snyder,* 597 S.W.2d 779, 782–83 (Tex.Civ.App.—Fort Worth 1980) (Massey, C.J., concurring); *Ex parte Stanford,* 557 S.W.2d 346, 349 (Tex. Civ.App.—Houston [1st Dist.] 1977).

I am not persuaded that the United States Supreme Court no longer regards contempts as *sui generis,* but instead regards them as ordinary criminal prosecutions. In *Levine v. United States,* 362 U.S. 610, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1959), the Court reiterated that "Procedural safeguards for contempt do not derive from the Sixth Amendment. Criminal contempt proceedings are not within 'all criminal prosecutions' to which that amendment applies." *Id.* at 616, 80 S.Ct. at 1042. The decision in *Bloom* was not premised upon an outright rejection of this traditional view of contempts, nor has the United States Supreme Court held the due process clause requires persons accused of criminal contempt in state proceedings be accorded the full panoply of sixth amendment rights available to persons in normal criminal proceedings. Until such time as that Court indicates otherwise, we should continue to adhere to the view that contempt is a unique, quasi-criminal sanction in which procedural safeguards are derived from traditional notions of due process rather than the sixth amendment. *See United States v. Bukowski,* 435 F.2d 1094, 1099–1101 (7th Cir.1970), *cert. denied,* 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971).

The requirement of due process was met in this case by reasonable notice and adequate opportunity to appear and to be heard. *Blackmer v. United States,* 284 U.S. at 440, 52 S.Ct. at 256. A contempt proceeding is unlike a civil suit. The person charged may not ignore the show cause order as he might ignore citation in a civil suit. He is commanded to appear and if he ignores the command he may be brought in under a capias. *Ex parte Davis,* 161 Tex.

561, 344 S.W.2d 153, 155–56 (Tex.1961). Although an accused has the right to be present, he also has the corresponding duty to be present. Accordingly, I would remand Relator to the custody of the Harris County sheriff.