**Juan Antonio LOZANO, Sr. and Blanca Suarez Lozano, Appellants,**

v.

**Deana Ann LOZANO, Appellee.**

No. 14–97–00560–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

April 23, 1998.

Ronald J. Restrepo, Christopher Deeves, Roger A. Rider, Houston, for appellants.

Reba Eichelberger, Baytown, for appellee.

Before YATES, EDELMAN and DRAUGHN, JJ.

## OPINION

EDELMAN, Justice.

Juan Antonio Lozano, Sr. ("Juan") and Blanca Suarez Lozano ("Blanca") appeal a turnover order granted in favor of Deana Ann Lozano ("Deana") on the grounds that the trial court abused its discretion by: (1) ordering the turnover of a portion of appellants' Individual Retirement Annuity ("IRA") because: (a) it is exempt from execution as a matter of law; (b) Deana had not pleaded that the Exxon thrift plan from which the IRA was funded was not qualified under the Internal Revenue Code (the "IRC"); and (c) even if it was not exempt, the IRA was not subject to turnover because it could be attached or levied upon by garnishment; (2) denying appellants a continuance because they were not on notice that the thrift plan's

qualification under the IRC would be a subject of the turnover hearing; (3) refusing to stay enforcement of the turnover order because the IRA was exempt from execution as a matter of law; (4) ordering the turnover of appellants' property in Mexico because it required the determination of title to property outside the court's jurisdiction; (5) ordering the direct transfer of appellants' property interest in Mexico to Deana; and (6) ordering appellants, their relatives, attorneys and representatives not to exercise any rights under Mexican law with regard to the property in Mexico. We affirm as modified.

## Background

On February 12 and March 5, 1997, respectively, the trial court entered a turnover order and an order modifying it (collectively, the "turnover order") which provided, in part:

> [T]he court finds and concludes that [Juan] has failed to meet the his burden of proof that the properties described by [Deana] are exempt and that ... said property and records are not exempt from attachment, execution, or any other type of seizure for the satisfaction of liabilities. The properties cannot be readily attached or levied on by ordinary legal process.

> IT IS THEREFORE ORDERED THAT [appellants] shall execute an authorization to the Minnesota Mutual Fund Trustee ... to release and remit to the constable ... funds in the amount of $ 144,000.00 as part payment on the final judgment signed on August 31, 1994, in this case.

> IT IS FURTHER ORDERED THAT [appellants] shall turnover to the constable ... all indicia of ownership of the real property with improvements located at ... Mexico.

> IT IS FURTHER ORDERED THAT ... the constable shall ... place the Mexico property in the hands of a receiver for sale, with the sale proceeds distributed to [Deana] to be applied to the judgment

debt, and if unsuccessful, the real properties and all titles transferred to [Deana].

> ORDERED THAT [appellants], their relatives and agents, including attorneys, are enjoined from attempting to prevent, alter, or in any manner attempt to exercise possession and control of the real properties located in Mexico ... in an effort to prevent this court order from becoming effective.

On June 26, 1997, this court issued a writ of injunction ordering Deana to refrain from executing on the portion of the turnover order requiring turnover of $144,000 from the funds in Juan's individual retirement account at Minnesota Mutual Life Insurance Company until further order of this court.

## Timely Filing of Statement of Facts

As a preliminary matter, Deana contends that appellants failed to file a timely statement of facts by July 10, 1997, or request a timely extension by July 25, 1997. This court's records reflect that appellants filed: (1) their appeal bond in this case on May 12, 1997; (2) a petition for writ of injunction concerning the turnover order in a separate original proceeding under cause number 14–97–558–CV and a statement of facts on May 23; and (3) a motion to transfer the statement of facts from the injunction proceeding to this appeal on July 30. That motion was granted on August 14.

■ Under the Texas Rules of Appellate Procedure previously in effect, a court of appeals had no authority to consider a late-filed statement of facts where a timely motion for extension of time was not filed. *See* TEX.R.APP. P. 54(a), (c).[1] Beginning September 1, 1997, no case may be disposed of or issue decided on the ground that the record was not timely filed, before or after that date, except under the amended rules currently in effect. *See* Texas Supreme Court and Court of Criminal Appeals, *Final Approval of Revisions to the Texas Rules of Appellate Procedure* (Aug. 15, 1997). Under the current rules, there is no constraint on our consideration of a late-filed statement of

---

**1.** Rule numbers that contain no decimal places refer to the Texas Rules of Appellate procedure in effect before September 1, 1997, whereas rule numbers which contain decimal places refer to the rules in effect beginning on that date.

facts. Moreover, a party may suffer an adverse result from a failure to file a "reporter's record" only where it results from the party's failure to pay the corresponding fees and only where the party is first given a reasonable opportunity to cure. *See* TEX. R.APP. P. 37.3(b). Accordingly, the timeliness of the filing of the statement of facts is of no consequence to the disposition of this appeal.

## Standard of Review

The issuance of a turnover order is reviewed under an abuse of discretion standard, and, even if predicated on an erroneous conclusion of law, will not be reversed for abuse of discretion if the judgment is sustainable for another reason. *See Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex.1991). Interpretation of a statute is a pure question of law over which a judge has no discretion. *See Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 437 (Tex.1997). Thus, a trial court has no discretion in determining what the law is or applying the law to the facts. *See Huie v. DeShazo*, 922 S.W.2d 920, 927 (Tex.1996). Consequently, a trial court's erroneous legal conclusion, even in an unsettled area of law, is an abuse of discretion. *See id.* at 927–28. Similarly, although a turnover order is not reviewed under a sufficiency of the evidence standard, the lack of any evidence to support a turnover order is a relevant factor in determining whether the trial court abused its discretion in entering it. *See Beaumont Bank*, 806 S.W.2d at 226.

2. Section 31.002 provides, in part:
(a) A judgment creditor is entitled to aid ... through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property ... that:
(1) cannot readily be attached or levied on by ordinary legal process; and
(2) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.
(b) The court may:
(1) order the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control, together with all documents or records related to the property, to a designated sheriff or constable for execution;

## Exempt Status of IRA

The first of appellants' eight points of error argues that the trial court abused its discretion by ordering the turnover of a portion of their IRA because it is exempt from execution as a matter of law: (1) as a qualified individual retirement annuity under subsection 42.0021(a) of the Texas Property Code; and (2) as an exempt rollover account under subsection 42.001(b). Deana responds that the appellants failed to meet their burden to prove that the source of the funds used to establish the IRA account was a qualified plan.

A court may not enter or enforce an order that requires the turnover of the proceeds of, or the disbursement of, property that is exempt under any statute, including section 42.0021 of the Texas Property Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 31.002(f) (Vernon 1997).[2] Section 42.0021(a) provides in part:

> *In addition to the exemption prescribed by Section 42.001, a person's right to the assets held in or to receive payments, whether vested or not, under any stock bonus, pension, profit-sharing, or similar plan, including a retirement plan for self-employed individuals, and under any annuity or similar contract purchased with assets distributed from that type of plan, and under any retirement annuity or account described by Section 403(b) of the Internal Revenue Code of 1986, and under any individual retirement account or any individual retirement annuity ... is exempt from attachment, execution, and seizure for the satisfaction of debts unless the plan, con-*

. . . .
(3) appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment.
. . . .
(f) A court may not enter or enforce an order under this section that requires the turnover of the proceeds of, or the disbursement of, property exempt under any statute, including Section 42.0021, Property Code.
TEX. CIV. PRAC. & REM.CODE ANN. § 31.002 (Vernon 1997).

*tract or account does not qualify under the applicable provisions of the Internal Revenue Code of 1986.*[3]

TEX. PROP.CODE ANN. § 42.0021(a) (Vernon Supp.1998) (emphasis added).

 It is the burden of the party claiming an exemption under section 42.0021 to prove that he is entitled to it. *See Rucker v. Rucker,* 810 S.W.2d 793, 795–96 (Tex.App.—Houston [14th Dist.] 1991, writ denied); *see also Roosth v. Roosth,* 889 S.W.2d 445, 459–60 (Tex.App.—Houston [14th Dist.] 1994, writ denied). However, Texas courts apply a liberal rule of construction to state exemption statutes. *See In re Volpe,* 943 F.2d 1451, 1453 (5th Cir.1991); *see also Hickman v. Hickman,* 149 Tex. 439, 234 S.W.2d 410, 414 (1950).

In this case, the trial court held an evidentiary hearing on Deana's application for turnover order and a second hearing on appellants' application for temporary restraining order, temporary injunction, and permanent injunction to stop enforcement of the turnover order. The exhibits admitted into evidence include (1) a variable annuity application in which Juan applied to Minnesota Mutual Life Insurance Company ("Minnesota Mutual") in February of 1996 for an "IRA Rollover" plan; and (2) eleven account confirmations issued during 1996 on the Minnesota Mutual "individual retirement annuity" account. With regard to this account, Juan testified, among other things, that (1) the two "contributions" to the Minnesota Mutual IRA shown in the account confirmations were wire transferred directly from a thrift account and annuity account at Exxon where he had been employed; (2) he understood

that the Minnesota Mutual IRA was a qualified plan under IRS Regulations; and (3) that he paid no taxes on the contributions wire transferred into the Minnesota Mutual IRA.

 "[A] person's right to the assets held in or to receive payments ... under *any ... individual retirement annuity ...* is exempt from attachment, execution, and seizure for the satisfaction of debts *unless* the plan, contract, or account does not qualify under the applicable provisions of the Internal Revenue Code of 1986." TEX. PROP.CODE ANN. § 42.0021(a) (Vernon Supp.1998) (emphasis added). By the plain meaning of this provision, evidence that an account is an individual retirement annuity is sufficient to establish that it is exempt unless evidence is presented that the IRA does not qualify for such treatment under the IRC.[4]

 In this case, the evidence is uncontroverted, and appellees do not dispute, that Juan's account at Minnesota Mutual is an individual retirement annuity. Under section 42.0021(a), this fact is sufficient to establish that the account was exempt from execution unless any evidence showed that the IRA did not qualify under the IRC. Because we have not been cited, nor have we found, any evidence that the IRA failed to so qualify, we have no basis to affirm the trial court's conclusion that the individual retirement annuity was not exempt.

Deana asserts that the dispositive issue is whether appellants proved that the *sources* of the funds used to establish the IRA were exempt. That factor was pertinent to appellants' alternative claim under subsection 42.0021*(b)*, concerning amounts qualifying as

---

3. In addition, amounts qualifying as nontaxable rollover contributions under specified sections of the IRC on or after January 1, 1993, are also treated as exempt amounts under Subsection (a). *See id.* § 42.0021(b).

4. In *Rucker,* the appellant challenged an order requiring him to turnover a portion of his monthly disability retirement payments because, among other reasons, they were exempt under section 42.0021(a) of the Property Code. *See Rucker,* 810 S.W.2d at 794–95. This court rejected that contention because appellant introduced no evidence showing the benefits to be qualified under the IRC. *See id.* at 795–96. However, section 42.0021 states that a plan or account described

therein is exempt *unless* it does *not* qualify under the IRC. Therefore, contrary to *Rucker,* we believe that the plain meaning of this language imposes a burden upon the debtor to show only that the plan or account is of a type listed in that section but not to also affirmatively prove that it qualifies under the IRC. Instead, the burden is then on the creditor to show that the plan or account does not qualify under the IRC. One commentator has written that this interpretation is also consistent with the inequities which section 42.0021 was intended to address. See Katherine C. Hall, *Retirement Benefits: Texas Property Code Amendment,* 50 Tex. B.J. 993 (1987).

nontaxable rollover contributions under various sections of the IRC. However, because the IRA was shown to be exempt under subsection 42.0021(a), in which the source of the funds is not a factor, the source of the funds need not be addressed. Accordingly, appellants' first point of error is sustained.[5]

## Adjudication of Title

 Appellants' sixth point of error argues that the trial court abused its discretion by ordering the turnover of appellants' property located in Mexico because Juan's mother-in-law, who has lived in a house on one of the properties in Mexico pursuant to an oral grant, may be vested with a life estate in the property or have other rights as a tenant. Therefore, appellants claim that her ownership rights could not be determined in a turnover proceeding, and that the Texas court lacked jurisdiction to determine title to this real property located outside the State.

 Texas courts do not apply the turnover statute to non-judgment debtors. *See Beaumont Bank,* 806 S.W.2d at 227. Nor can the turnover statute be used to determine a party's substantive rights or property rights of third parties. *See Resolution Trust Corp. v. Smith,* 53 F.3d 72, 78, 79 (5th Cir.1995). However, the turnover statute allows a court to reach assets owned by and subject to the control of a judgment debtor, even if those assets are in the hands of a third party. *See id.* at 78.

In *Reeves,* the appellees sued the appellant in Texas to execute on a Maryland judgment, and the trial court[6] ordered the appellant to turn over to a receiver "all indicia of ownership" in certain nonexempt real property in Portugal subject to the appellant's control. *See Reeves v. Federal Sav. and Loan Ins. Corp.,* 732 S.W.2d 380, 381 (Tex.App.—Dallas 1987, no writ). The appellant argued that the trial court lacked jurisdiction to adjudicate title to the realty or compel him to turn over foreign realty, that the title could only

be determined according to Portuguese law, that a close corporation was the record title holder, and that his mother in law held an undivided one-half interest in the property. *See id.* In affirming the turnover order, the court of appeals observed that the receiver might have to comply with Portuguese law in order to convey the property to satisfy the judgment, and that it might well be difficult to do so. *See id.* at 382 (Enoch, C.J.). However, those considerations did not affect the jurisdiction of the trial court over the person of appellant or its authority under section 31.002 to compel him to turn over any muniment of title he had in his control to the court appointed receiver. *See id.*[7]

In this case, appellants had the burden to present in their brief such discussion of the facts and authorities relied upon as are needed to maintain the point at issue. *See* Tex. R.App. P. 74(f). Having failed to distinguish or refute the reasoning of *Reeves* or its application to the facts of this case, appellants have not sustained their burden to prevail on their sixth point of error. Accordingly, it is overruled.

## Direct Transfer of Assets to Judgment Creditor

Appellants' seventh point of error argues that the trial court abused its discretion by ordering the direct transfer of appellants' property interest in Mexico to Deana because the turnover statute prohibits the direct transfer of assets to a judgment creditor. Deana responds that the turnover order properly provides for the transfer of the property to a receiver, not directly to Deana.

 Section 31.002 allows the trial court to order a judgment debtor to turn over nonexempt property that is within the debtor's possession or control, together with all records related to the property, to a designated constable for execution, or to appoint a receiver to take possession of the property,

---

5. Because we sustain the challenge to the portion of the turnover order regarding appellants' IRA in point of error one, we need not address the additional challenges to that portion of the turnover order in their second through fifth points of error.

6. Hecht, J.

7. *See generally* J. Thomas Oldham, *Conflict of Laws and Marital Property Rights,* 39 Baylor L.Rev. 1255, 1267–68 (1987).

sell it, and pay the proceeds to the judgment creditor to satisfy the judgment. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 31.002(b) (Vernon 1997). However, a turnover order may not order the turnover of property directly to judgment creditors. *See Ex parte Johnson,* 654 S.W.2d 415, 418–19 (Tex.1983).[8] This is because of the potential for error or abuse in that: (a) the turnover statute allows ex parte entry of turnover orders without notice and hearing; and (b) direct turnover to the creditor could deny the debtor an opportunity to assert defenses if the creditor promptly or improperly disposes of the property. *See id.*

■ In this case, the turnover order orders appellants to "turnover to the constable ... all indicia of ownership of the real property with improvements located at ... Mexico" and orders the constable to "place the Mexico property in the hands of a receiver for sale, with the sale proceeds distributed to [Deana] to be applied to the judgment debt, *and if unsuccessful, the real properties and all titles transferred to [Deana]*." (emphasis added). Although the order does not initially require a turnover of property directly from the debtor to the creditor, it allows a subsequent turnover of the property from the receiver to the creditor if the receiver is unsuccessful in selling the property.

Deana has cited and we have found no authority or rationale suggesting that the insertion of such an intermediate step overcomes the legal or practical deficiencies of a direct turnover. Moreover, to the extent that an option to transfer property directly to the creditor could arguably lessen a receiver's incentive to achieve a sale and application of proceeds to the judgment, particularly where foreign property or other complications are presented, it would appear to undermine the protection afforded

by requiring a receiver. Under these circumstances, we conclude that allowing the property to be transferred in kind to the creditor is not authorized by the turnover statute. We thus sustain appellants' seventh point of error.

### Anti-suit Injunction

■ Appellants' eighth point of error argues that the trial court abused its discretion by ordering appellants, their relatives, attorneys and representatives not to exercise any rights under Mexican law with regard to the property in Mexico. Appellants contend that, because the trial court made no inquiry to determine special circumstances justifying such an anti-suit injunction, it abused its discretion in so restricting the rights of appellants and their agents, relatives, and attorneys.[9] Deana responds that the turnover order does not enjoin anyone from exercising their rights to the property, but only from committing fraud to avoid paying the obligation.

The turnover order enjoins appellants and their relatives, agents, and attorneys "from attempting to prevent, alter, or in any manner attempt to exercise possession and control of the real properties located in Mexico ... in an effort to prevent this court order from becoming effective." We interpret this provision to prohibit only attempts to exercise physical control of the property or to transfer possession or control of the property so as to defeat the operation of the order or its execution by a constable, receiver, or any subsequent purchaser. We do not construe the provision to inhibit appellants' exercise of their legal or administrative rights in any appropriate forum. Therefore, appellants' eighth point of error is overruled.

8. Although *Ex parte Johnson* interpreted former article 3827a, the recodification of that provision to section 31.002 effected no substantive change and, thus, no modification to the holding of *Ex parte Johnson. See Bear, Stearns & Co., Inc. v. Amad,* 919 F.2d 920, 922 (5th Cir.1990); *Copher v. First Bank,* 852 S.W.2d 738, 739 (Tex.App.—Fort Worth 1993, no writ).

9. During oral argument, appellants further asserted that this provision cannot validly extend to their relatives or other persons who were not

named parties to the proceeding. *See Ex parte Foster,* 144 Tex. 65, 188 S.W.2d 382, 383 (1945) ("Not being a nominal party to the injunction proceedings ... relator ordinarily would not be bound by its terms, and could not legally be convicted for violating its terms."). However, because this matter was not briefed and because it is not apparent how appellants have standing to assert it on behalf of unnamed parties, we do not address it.

Accordingly, the turnover order is: (1) modified to delete any order to (a) turnover funds in the Minnesota Mutual IRA; and (b) transfer any real properties and titles thereto from a receiver to Deana; and (2) affirmed as to the remainder.

YATES, Justice, concurring and dissenting.

I respectfully dissent to the majority's resolution of appellant's first point of error. The exempt status of the Minnesota Mutual IRA is controlled by a prior decision of this court, *Rucker v. Rucker,* 810 S.W.2d 793, 795–96 (Tex.App.—Houston [14th Dist.] 1991, writ denied). In that case, this court interpreted Section 42.0021 of the Texas Property Code as requiring the debtor to introduce evidence showing qualification under the Internal Revenue Code of 1986. *See id.* at 796; TEX. PROP. CODE ANN. § 42.0021 (Vernon Supp.1998). Here, the majority holds the burden is on the debtor to show that the plan or account is of a type described in that section, *and the burden is on the creditor to show that the plan or account does not qualify under the IRC.* The majority relies on its own interpretation of the "plain meaning" of the statute and a commentator's analysis, instead of the holding in *Rucker* to reach its conclusions.

In doing so, it has ignored the fundamental principle of stare decisis that requires a continued adherence of a court to its previous decisions. "[I]n the area of statutory construction, the doctrine of stare decisis has its greatest force." *Marmon v. Mustang Aviation, Inc.,* 430 S.W.2d 182, 186 (Tex.1968). A court's adherence to its precedents promotes efficiency, fairness, and legitimacy and is the cornerstone of common law. *See Weiner v. Wasson,* 900 S.W.2d 316, 320 (Tex.1995). The majority increased the uncertainty of relying on judicial decisions by rejecting the general rule in Texas adhered to by this and other courts that a party claiming an asset has the burden to prove it is exempt. *See Santibanez, M.D. v. Wier McMahon Co.,* 105 F.3d 234, 239 (5th Cir.1997) *(citing Roosth v. Roosth,* 889 S.W.2d 445, 459–60 (Tex.App.—Houston [14th Dist.] 1994, writ denied); *Jacobs v. Adams,* 874 S.W.2d 166, 167 (Tex. App.—Houston [14th Dist.] 1994, no writ); *accord Dale v. Finance Am. Corp.,* 929 S.W.2d 495, 498–99 (Tex.App.—Texarkana 1996, writ denied).

I do realize that courts must be free, at certain times, to overrule their past decisions and in those rare occasions stare decisis does not prevail. *See Dawkins v. Meyer,* 825 S.W.2d 444, 454 (Tex.1992) (J. Gonzalez, dissenting) (noting that there are "rare occasions" when "[t]here are justifiable escapes and liberations from the rigidities and inflexibilities of stare decisis"). However, I am not persuaded that this case poses one of those "rare occasions" when stare decisis should be ignored. First, the facts and legal issues presented in this case are substantially the same as those resolved in *Rucker.* Second, although the majority relies almost exclusively on the "plain meaning" of the statute, a previous panel of this court interpreted the same language in a different manner. Further, the decision in *Rucker* is neither in conflict with other decisions nor has its rationale been criticized. Finally, if the construction of a statute is unacceptable to the Legislature, a simple remedy is available by the process of legislative amendment. *See James v. Vernon Calhoun Packing Co.,* 498 S.W.2d 160, 162 (Tex.1973); *Marmon v. Mustang Aviation, Inc.,* 430 S.W.2d 182, 186 (Tex.1968); *Moss v. Gibbs,* 370 S.W.2d 452, 458 (Tex.1963).

Consequently, I would overrule appellant's first point of error. I concur in the remainder of the majority's opinion.