Revised February 7, 2001

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-40532

_____

In The Matter Of: JOE ALVIN ANDREWS, SR.,

Debtor.

_____

CADLEWAY PROPERTIES, INC.,

Appellant,

versus

JOE ALVIN ANDREWS, SR.,

Appellee.

*******************************************************************

99-40832

In The Matter Of: JOE ALVIN ANDREWS, SR.,

Debtor.

_____

CADLEWAY PROPERTIES, INC.,

Appellant,

versus

JOE ALVIN ANDREWS, SR.; WHATABURGER OF ALICE, INC.;
M. LOUISE ANDREWS; JOE ALVIN ANDREWS, JR.; KATHY A. REESE;
MICHAEL BOUDLOCHE, Trustee,

Appellees.

*******************************************************************

99-40837

In The Matter Of: JOE ALVIN ANDREWS,

Debtor.

_____

CADLEWAY PROPERTIES, INC.,

                                                    Appellant,

                              versus

JOE ALVIN ANDREWS; WHATABURGER OF ALICE, INC.;
M. LOUISE ANDREWS; JOE ALVIN ANDREWS, JR.; KATHY A. REESE;
MICHAEL BOUDLOCHE, Trustee,

                                                    Appellees.

_____

Appeals from the United States District Court
for the Southern District of Texas

_____

January 19, 2001

Before JOLLY, HIGGINBOTHAM, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:

This case presents the question of whether a judgment debtor, forced to turn over his pending bankruptcy court claims to a sheriff for execution, retains any right to payment from the bankruptcy debtor sufficient to grant him standing to appeal adverse rulings on those claims. We hold that he does.

I

Cadleway Properties, Inc. ("Cadle") won a judgment of approximately $1 million against the debtor Joe Alvin Andrews, Sr. When Andrews filed for bankruptcy, Cadle filed a claim in bankruptcy court based on its $1 million judgment against Andrews. It also filed a damages claim against the defendants (including Andrews) for conspiring to take all of Andrews's non-exempt assets out of Andrews's name and render Andrews judgment proof with

2

respect to the $1 million claim. Cadle objected to Andrews's discharge.

The bankruptcy court denied Cadle's objection to the discharge and ruled that the trustee and not Cadle was the owner of the separate damages claim. Then, on April 1, 1998, Andrews, the trustee, and the other defendants filed a joint motion to compromise all claims, including the damages claim Cadle had brought. Cadle objected to the compromise claiming that the trustee could not settle what he did not own.

Meanwhile, David Lobingier brought a turnover proceeding in a Texas state trial court against Cadle. Cadle had refused to pay Lobingier the outstanding balances on Lobingier's judgments against Cadle.[1] In the turnover proceeding, Lobingier sought title to Cadle's judgment against Andrews. On May 28, 1998, the state district court issued a turnover judgment after a trial at which Cadle participated. The judgment turned over Cadle's claims in the Andrews bankruptcy to the Tarrant County Sheriff for sale, the

---

[1] Lobingier obtained three judgments against Cadle, all apparently arising out of a libel/slander lawsuit. Cadle claims that the turnover order applies to the satisfaction of only one of these judgments, and that the judgment has been independently satisfied. We do not address these claims. Determining whether a turnover judgment has been satisfied is the responsibility of the Texas courts, not the federal courts. Since the turnover order has not been vacated by the state courts, we do not question its validity.

3

proceeds of which would go to Lobingier.[2] Cadle never appealed the turnover order.

In bankruptcy court, a hearing on the proposed compromise was held on August 17, 1998. On September 22, 1998, Bankruptcy Judge Leal entered an order approving the compromise, which would pay $425,000 to the bankruptcy estate. On November 12, 1998, he entered a take-nothing judgment as to the separate damages claim. Andrews received a discharge.

Cadle appealed three decisions to the district court: the denial of its objection to the discharge action, the order approving the compromise of the damage claim, and the take-nothing judgment. The defendants, including Andrews and the trustee, moved to dismiss the appeal for lack of standing, arguing that the May 1998 turnover order immediately divested Cadle of any ownership interest in its judgment against Andrews and any other related claims. The district court granted the motion to dismiss, and Cadle appealed.

II

The question in this appeal is thus whether Cadle has standing to appeal the decisions of the bankruptcy court that he attempts to challenge.[3] Under the bankruptcy code, three types of entities have standing to challenge a debtor's discharge: trustees,

_____

[2] No such sale was ever conducted, however, apparently because Cadle threatened to sue the Sheriff if he conducted the sale.

[3] Cadle's standing is a question of jurisdiction that we review *de novo*.

4

creditors, and United States trustees.[4]  A "creditor" is defined as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."[5]  In turn, a "claim" is defined in relevant part as "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."[6]  This "broadest possible definition" of the term "claim" captures "all legal obligations of the debtor, no matter how remote or contingent."[7]

Cadle thus has standing as a "creditor" if it has a "claim." In other words, Cadle has standing if it has a right to payment from the debtor Andrews.  The $1 million judgment that Cadle won

---

[4] 11 U.S.C.A. § 727(c)(1) (2000).

[5] 11 U.S.C.A. § 101(10)(A).

[6] 11 U.S.C.A. § 101(5)(A).

[7] H.R. Rep. No. 95-595, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.C.C.A.N. 5963, 6266; *see also Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1275 (5th Cir. 1994).  Courts have consistently interpreted the bankruptcy code's definition of claim broadly, including even potential claims based on injuries that have not yet occurred. *See, e.g., In re Wheeler*, 137 F.3d 299, 300-01 (5th Cir. 1998); *In re Jensen*, 995 F.2d 925, 928-30 (9th Cir. 1993); *Epstein v. Official Committee of Unsecured Creditors*, 58 F.3d 1573, 1577 (11th Cir. 1995).  The Third Circuit has taken a narrower view of "claim," *see In re M. Frenville Co.*, 744 F.2d 332 (3d Cir. 1984), but this approach has been universally rejected. *See, e.g., Jensen*, 995 F.2d at 930 (describing *Frenville* as "widely criticized"); *Epstein*, 58 F.3d at 1576 n.2 (rejecting *Frenville*).

against Andrews is a enforceable right to payment: it is a legal claim that has been reduced to judgment. Cadle also made a damages claim that also was a right to payment, although unliquidated, contingent, and disputed. This case therefore boils down to whether Cadle retained a right to payment from Andrews, even if contingent or disputed, after the turnover order was issued; if so, Cadle had a claim against Andrews and has standing to appeal the bankruptcy court's extinguishment of that claim.

Answering this question requires an interpretation of the turnover order.[8] The turnover order states:

> IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED that by and through this order all of [Cadle's] right, title and interest to the Andrews Claim are hereby turned over to the Tarrant County Sheriff.

The order defines the "Andrews Claim" to include, inter alia, "[a]ll rights, claims, and/or causes of action belonging to [Cadle] . . . arising in any manner or in any time in [the Andrews] bankruptcy proceeding." On its face, then, the order "turn[s] over" to the Sheriff the $1 million claim against the Andrews

---

[8] While "federal law determines when [a] claim arises for bankruptcy purposes," *In re Hassanally*, 208 B.R. 46, 50 (9th Cir. BAP 1997), determining the existence of a claim "requires an analysis of the interests created by non-bankruptcy substantive law," *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1274 (5th Cir. 1994). The appellees argue that it is an impermissible collateral attack for Cadle to argue that the district court did not have the authority to divest Cadle of its ownership of the Andrews Claims by the turnover order. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). This argument is irrelevant to our decision, because we interpret the turnover order without questioning the authority of the state court to enter it.

bankruptcy estate and Cadle's damages claim against Andrews, the trustee, and the other defendants.

Appellees argue that this should be the end of our inquiry. Since the claims are no longer Cadle's, they contend, Cadle has no standing to appeal the bankruptcy court's rulings. This argument ignores the fact that "turn over" has a precise definition, provided by Texas statute,[9] that delimits what is transferred to the Sheriff by a turnover order. To rely solely on the language in the order that "all of [Cadle's] right, title and interest to the Andrews Claim [was] turned over" only begs the question of what it means to "turn over" one's right, title, and interest.

The turnover statute provides the court with three options once it determines a turnover order is appropriate:

> (b)  The court may:
> (1)  order the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control, together with all documents or records related to the property, to a designated sheriff or constable for execution;
> (2)  otherwise apply the property to the satisfaction of the judgment; or
> (3)  appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment.[10]

---

[9] Tex. Civ. Prac. & Rem. Code § 31.002 (2000).

[10] Tex. Civ. Prac. & Rem. Code § 31.002(b).

Part (b)(1) describes what the state court did in this case.[11] It allows turnover to the Sheriff "for execution."

"Execution," like "turn over," is a term defined by Texas law. Rules 621 through 656 of the Texas Rules of Civil Procedure define execution. Execution is a process for enforcing a judgment.[12] An execution for sale of personal property requires a sheriff or constable ("officer") to levy upon the property and must provide for public notice of the sale.[13] If the property sold does not satisfy the execution, the officer may take further action to satisfy the deficiency.[14] Excess proceeds from the sale presumably are returned to the judgment debtor.[15] The judgment debtor may replevy the seized property by delivery to the officer of a bond for the value of the property,[16] and after replevy may dispose of

---

[11] The state court clearly did not act pursuant to part (b)(3). Part (b)(2) is addressed below.

[12] Tex. R. Civ. P. 621.

[13] Tex. R. Civ. P. 631 (execution for sale). *See also* Tex. R. Civ. P. 637 (requirement of levy of execution); Tex. R. Civ. P. 650 (requirement of public notice of sale).

[14] Tex. R. Civ. P. 651.

[15] The rules on execution do not make this explicit. Tex. Civ. Prac. & Rem. Code § 31.002(b)(3), which creates a process parallel to execution that uses a receiver rather than the sheriff, makes this clear. Obviously, a judgment debtor cannot be compelled to pay through execution sale more than the debtor owes to the judgment creditor.

[16] Tex. R. Civ. P. 644.

the property if he pays the officer the value of the property or forfeits the bond.[17]

Thus, the judgment debtor is legally compelled to provide the property to the sheriff for purposes of an execution sale.[18] A turnover order does not transfer title; it places an obligation on the judgment debtor to deliver the property to the sheriff. It creates a burden of production, not a conveyance.[19] Ownership is transferred when the property is sold.

All this establishes that even after turnover, the judgment debtor retains an ownership interest in the levied property until it is sold. Until the turned-over property is sold, Cadle has a right to collect the $1 million judgment from Andrews.[20] Cadle also

---

[17] Tex. R. Civ. P. 645-46.

[18] *Bear Stearns & Co., Inc. v. Amad*, 919 F.2d 920, 921 (5th Cir. 1990) (holding that the turnover statute "require[s] the burden of production of property which is subject to execution to be placed with the debtor."), *quoting* House Comm. on Judicial Affairs, Bill Analysis, Tex. H.B. 1260, 66th Leg. (1979); *see also Ex Parte Johnson*, 654 S.W.2d 415, 418 (Tex. 1983) (quoting the same passage from the legislative history).

[19] Turnover orders frequently require the judgment debtor to turn over only indicia of ownership, not the property itself. *See, e.g., Reeves v. FSLIC*, 732 S.W.2d 380, 382 (Tex. App.—Dallas 1987) ("[T]he trial court did not go so far as to compel [the judgment debtor] to make a conveyance. It merely compelled him to surrender any indicia of ownership."); *Lozano*, 975 S.W.2d at 68.

[20] Although the turnover order may have restricted Cadle's ability to pursue collection of his judgment, this does not eliminate the fact that Cadle has a claim. In an analogous context, the Ninth Circuit held that a person's cause of action under the ADA against the debtor was a bankruptcy claim, even though the person had not yet received a right-to-sue letter

9

has a right to payment for his damages claim, contingent upon the success of that claim.[21]  A claim for damages that has not been reduced to judgment is still a "claim" under the bankruptcy act.[22] Although the extent of Cadle's right to payment is contingent on whether Cadle replevies the judgment,[23] whether the sheriff sells the judgment (if not replevied),[24] and how much the judgment sells

---

allowing her to prosecute the ADA claim.  *See O'Loghlin v. County of Orange*, 229 F.3d 871, 874 (9th Cir. 2000).

[21] We assume here that Cadle is the owner of the damages claim because ownership of the damages claim is one of the issues on appeal from the bankruptcy court. The district court did not reach this issue because of its holding on the issue of standing.

[22] *See* 11 U.S.C.A. § 101(5)(A).

[23] Cadle's right to payment is undisputable if Cadle replevies. Prior to sale, Cadle may replevy the property by delivering a bond. This contrasts with *In re Vahlsing*, 829 F.2d 565 (5th Cir. 1987), upon which the appellees rely. It held that a creditor has no standing to pursue adversary claims in bankruptcy when the creditor's only basis for doing so was her ownership of a claim that was earlier dismissed in state court. Dismissal of a claim precludes any possibility of collecting any money.

[24] Even without replevin, Cadle, as a judgment debtor to Lobingier, has an interest in the collection of the $1 million judgment (and the damages claim) if the Andrews claims are not sold.  Even if the Tarrant County Sheriff has the right to apply any payments Andrews make toward Cadle's debt to Lobingier, Cadle still has an interest in (1) receiving payment on the judgment before it is sold and (2) avoiding a deficiency judgment if the turned-over property is not sold.  Thus, Cadle has an interest and a right to demand payment from Andrews, even if the money goes to Lobingier, since by extracting payment Cadle reduces his liability. We have held that a person with a right to sue has a bankruptcy claim, even if someone else is entitled to the judgment proceeds. *See In re Davis*, 194 F.3d 570, 575-77 (5th Cir. 1999) (holding that administratrix authorized to bring wrongful death suit for the benefit of decedent's family had standing to bring a nondischargeability complaint in bankruptcy).

10

for (if sold),[25] even contingent right to payment is a claim under the bankruptcy code.[26]

Appellees argue that our reliance on the rules of execution must be wrong because the turnover statute was intended to provide a remedy to creditors *in addition to* execution.[27] They correctly quote *Bear Stearns & Co., Inc. v. Amad*[28] as saying that the turnover statute creates "an additional and cumulative method to aid in the collection of [ ] judgment."[29] But they overlook the court's explanation of how the statute does this. As noted above, the turnover statute "require[s] the burden of production of property which is subject to execution to be placed with the debtor."[30]

---

[25] Cadle also has an interest in receiving excess proceeds from the execution sale, but this is a right to payment from the sheriff, not from Andrews.

[26] 11 U.S.C.A. § 101(5)(A).

[27] Appellees also contend that, because turnover is different from execution, the rules governing writs of execution do not apply to turnover orders. This is nonsense. Turnover orders, like other final judgments, are *enforced by* execution. *See* Tex. R. Civ. P. 622. Texas courts repeatedly refer to the enforcement of turnover by execution. *See Ex Parte Johnson*, 654 S.W.2d 415, 418 (Tex. 1983) (*quoting* House Comm. on Judicial Affairs, Bill Analysis, Tex. H.B. 1260, 66th Leg. (1979)); *Lozano v. Lozano*, 975 S.W.2d 63, 68 (Tex. App.—Houston 1998) (same); *Anderson v. Lykes*, 761 S.W.2d 831, 833–34 (Tex. App.—Dallas 1988).

[28] 919 F.2d 920 (5th Cir. 1990).

[29] *Id.* at 921.

[30] *Id.*, *quoting* House Comm. on Judicial Affairs, Bill Analysis, Tex. H.B. 1260, 66th Leg. (1979). *See also Johnson*, 654 S.W.2d at 418 (quoting the same passage from the legislative history).

11

This shifting of the burden of production is the additional remedy turnover provides.  Also, the argument that our holding renders the turnover statute redundant also ignores parts (b)(2) and (b)(3) of the turnover statute, which allow for execution-like sales without requiring the use of a sheriff or constable.

Appellees contend in the alternative that Section 31.002(b)(2), which states that the court may "otherwise apply the property to the satisfaction of the judgment," allows the court to turn over all of Cadle's interest in its claims.  We disagree.  *Ex Parte Johnson*[31] observes that the right to replevy and the requirements of notice before sale in the execution rules protect the judgment debtor from premature sale of property due to an erroneous turnover order or creditor malfeasance.[32]  Texas courts have held that a turnover order under Section 31.002(b)(2) must provide the debtor with some protection from error or malfeasance.[33]  Consistent with these holdings, we hold that the turnover statute

---

[31] 654 S.W.2d 415, 418 (Tex. 1983).

[32] *See id.* at 418; *see also Lozano*, 975 S.W.2d at 68-69. *Johnson* predated the 1989 recodification of the turnover statute at Tex. Civ. Prac. & Rem. Code § 31.002. Its holding was reaffirmed in *Lozano*, 975 S.W.2d at 69 n.8, and *Copher v. First State Bank*, 852 S.W.2d 738, 739 (Tex. App.—Fort Worth 1993), which held that the recodification did not effect a substantive change in the law.

[33] *See Johnson*, 654 S.W.2d at 418 (refusing to allow direct transfer of title from judgment debtor to judgement creditor); *Lozano*, 975 S.W.2d at 68-69 (same).

as deployed here did not authorize a complete divestiture of the judgment debtor's interest in the property.

III

We therefore REVERSE the order of the district court dismissing Cadle's three appeals from the bankruptcy court for lack of standing. We REMAND to the district court to consider the merits of Cadle's appeals.